## LYNCH'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 296.

Circuit Court of Appeals, Second Circuit.

Aug. 7, 1945.

Monroe J. Cahn, of White Plains, N. Y., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott and S. Dee Hanson, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The decedent, Humphrey J. Lynch, was a member of the bar and during the year 1931 acted as legal counsel for Marguerite H. Lynch, Elizabeth F. Lynch and Anna L. Lynch in the prosecution of claims for their benefit against the Estate of John H. McArdle, deceased, in the Surrogate's Court of Westchester County, New York. On October 30, 1931, he succeeded in obtaining for them a decree from the Surrogate allowing their claims to the amount of $56,160. In the same decree the Surrogate found the assets of the McArdle Estate at the date of McArdle's death to have been $400,920.10 and the liabilities, including the claims of Marguerite, Elizabeth and Anna Lynch fixed at the aggregate of $56,160 and other claims fixed at $83,620, to have amounted to $139,780. In the decree the Surrogate directed that the various assets of the estate be held subject to the further order of the court. Complete distribution of the estate and payment of the claims of the Lynch sisters did not take place until 1940, or approximately two years after the death of Humphrey Lynch. The delay in distribution and payment was occasioned by conflicting claims of several of the claimants for priority in distribution, by further claims based on assessments of bank stock of the estate and by the fact that the assets of the estate were not in a liquid condition.

The claims of the three Lynch sisters against the McArdle Estate were for moneys advanced to him and for board and living expenses furnished him and his wife, who was their sister, over a number of years. On November 30, 1931 Humphrey Lynch appealed on behalf of the Lynch sisters from portions of the decree of October 30, 1931, which had disallowed interest and some other claims which they had made, and on December 1, 1931, certain devisees under the McArdle will appealed from the decree which had allowed the claims of the sisters. Both appeals were later withdrawn.

On November 16, 1931, Freda Rosenblum, an attorney associated with Humphrey Lynch, wrote a letter to the Lynch sisters informing them that an assignment in the amount of $7,000 of the money due them by virtue of the decree against the McArdle Estate would be acceptable to Lynch in payment of his fee of $5,000 for services already rendered and a further $2,000 for work in connection with the appeal which he was then contemplating from

the disallowance by the Surrogate of interest and other claims of the sisters. The assignment which was non-interest bearing was executed by the Lynch sisters on November 18, 1931, and recited that in consideration of one dollar and other good and valuable considerations they "have sold, assigned, transferred, and set over, and by these presents do sell, assign, transfer and set over unto Humphrey J. Lynch * * * his executors * * * and assigns, to his or their own proper use and benefit, the sum of $7,000 out of the money due us individually or jointly from the estate of John H. McArdle deceased."

On February 2, 1935, Humphrey Lynch waived in writing his right to payment of a certain dividend of .031141 payable on the original claims allowed by the Surrogate to the Lynch sisters amounting in the aggregate to $1,839.50 "upon the agreement and understanding, however, that any and all further dividends as and when paid shall be paid to Humphrey J. Lynch under the said assignment in satisfaction of whatever sum he is entitled to receive thereunder, * * *." The sisters were thereupon paid that aggregate on account of their claims.

The decedent Humphrey J. Lynch, who died on January 24, 1938 and had reported income on a cash basis, did not include any part of the value of the claims of the Lynch sisters of which a partial assignment to the extent of $7,000 was made to him in 1931 in payment of his fees. The distribution of $5,000 to his estate in 1940 was the first payment made on account of his fees. The remaining $2,000 was apparently never paid because the appeal on behalf of the sisters was not prosecuted beyond the mere filing of the notice of the appeal and was ultimately abandoned. The record does not show when this appeal was abandoned, or when the appeal by the other parties, who were attacking the claims of the sisters, was withdrawn. Therefore, so far as we are informed, the doubtful status of the sisters' claims and of that of the executors of the will of the taxpayer was not changed until after the withdrawal of the appeal which may not, so far as we know, have been during the first twenty-four days of January 1938—just before his death.

The taxpayer insists that the assigned claims which the testator took in payment should have been valued in 1931 when the assignment was made, but the Commissioner contends that it should be assessed as income for the year 1938, remaining due

at the time of the testator's death on January 24, 1938.

Section 42 of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1027, reads as follows:

"Sec. 42. Period in which items of gross income included

"The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period."

It is to be noted that Humphrey Lynch was reporting on a cash basis, and we are referred to no other method of accounting permitted him by the Commissioner. His rights after he received the partial assignment depended upon the Surrogate's decree awarding $56,160 to the assignors and was therefore directly affected by the appeals that were pending.

In North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, it was held that money in the hands of a receiver of North American Oil, appointed in a suit brought by the United States against North American Oil in which the ownership of the property from which the moneys were derived was challenged was not income to a judgment-creditor while an appeal was pending though the suit challenging ownership had been dismissed. Justice Brandeis said in the opinion at page 423 of 286 U.S., at page 615 of 52 S.Ct., 76 L.Ed. 1197:

"The net profits were not taxable to the company as income of 1916. For the company was not required in 1916 to report as income an amount which it might never receive. * * * There was no constructive receipt of the profits by the company in that year, because at no time during the year was there a right in the company to demand that the receiver pay over the money. Throughout 1916 it was uncertain who would be declared entitled to the profits. It was not until 1917, when the District Court entered a final decree vacating the receivership and dismissing the bill, that the company became entitled to receive the money. Nor is it material, for the purposes of this case, whether the company's return was filed on the cash receipts and disbursements basis, or on the accrual basis."

The opinion of Justice Cardozo in United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500, reached a similar conclusion as to income based upon a patentee's claim to profits received by an infringer, where appeal had been taken from the final decree in favor of the patentee entered in 1924. Pending the appeal by the infringer, a compromise occurred in 1925, thirteen years after the suit was brought in February, 1913, in which the patentee accepted less than the full amount of the judgment. The court held that, though the decree appealed from was entered in 1924, the income was not realized until 1925 when the entire litigation was settled.

We think the foregoing decisions of the Supreme Court require us to hold that no income was realized or accrued while the appeals from the Surrogate's decree were pending. We do not know when these appeals were withdrawn, and cannot say that they were not withdrawn after December 31, 1937, and prior to the date of death of the testator on January 24, 1938. It was for the taxpayer to prove that they were not withdrawn during the latter interval. There is an unsatisfactory attempt to do this by referring to the distribution of a dividend of .031141 to the Lynch sisters upon their claims against the McArdle estate. It is, however, speculation whether this small dividend was occasioned by the withdrawal of the appeals or to other circumstances of which we have no knowledge.

Aside from the foregoing considerations, we do not think that the assignment, though taken in payment, should be regarded as property within the meaning of the income tax law. It was a partial assignment by the sisters of their contested claims against an estate in process of liquidation. It would seem contrary to reason to treat their assignee as subject to taxation upon the theory that the rights which he received through the partial assignment were property of a different kind and subject to a different tax liability from the claims of his assignors. The fact that the claims of the sisters had resulted in a decree of the Surrogate was immaterial, even

in the absence of the pending appeals. Kyle v. Commissioner, 3 Cir., 43 F.2d 291. If the sisters had given to Lynch notes either of themselves or of a third party, which might have been negotiated in the market, the situation would have been different, for property of that kind is treated as taxable income of the year in which the negotiable instrument is received. T R 74, Art. 5–4. Such property as the assigned claim should not be so treated.

The language of L. Hand, J., in Shuster v. Helvering, 2 Cir., 121 F.2d 643, 645, is pertinent. He there said:

" * * * the last two arguments * * * rest upon the assumption that a compromise by which an obligor binds himself to make future payments, must be treated like property given in satisfaction of an accord; the contract being 'property' like a chattel. No word is more loosely used and it is easy enough to find authorities speaking of contracts as 'property,' but the consequences of so treating them for purposes of the income tax are absurd. It would follow for instance that all future payments which should become due under a contract of employment must be charged at once at their discounted value; so too of a lease, or of any other contract providing for serial payments. To argue that all these are income as soon as the obligor becomes bound, especially when the taxpayer, as here, keeps his books on a cash basis, is so fantastic as to deserve no discussion; it contradicts the fundamental notion that income is 'realized' gain, * * *."

Although the Shuster opinion dealt with a contract rather than an assignment, we think it equally contrary to the fundamental notion of income as "realized" gain to hold such an assignment to be "property" within the meaning of the income tax statute and therefore income realized at the time the assignment is made.

Order affirmed.

SWAN, Circuit Judge (dissenting).

Although the amount of tax involved in this litigation is small, the principles involved appear of sufficient importance to justify a brief statement of my reasons for disagreement with the majority opinion.

Section 22 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 354, provides that gross income includes "compensation for personal service, of whatever kind and in whatever form paid, or from professions * * *." Article 53 of Treasury Regulation 74 reads as follows:

"Art. 53. Compensation paid other than in cash.—Where services are paid for with something other than money, the fair market value of the thing taken in payment is the amount to be included as income. If the services were rendered at a stipulated price, in the absence of evidence to the contrary such price will be presumed to be the fair value of the compensation received. * * *"

In 1931 Attorney Lynch accepted from his clients a partial assignment of the judgment awarded them against the McArdle Estate in payment of his $5,000 fee. The Tax Court disposed of the case on the ground "that we are unable to find that the assignment of a part of the award had any market value in the year received or at any time prior to the death of the decedent," and therefore held that the sum of $5,000 was properly includible in the return for the period January 1 to January 24, 1938, un ler section 42 of the Act. In affirming, the majority opinion states that the assignment, although taken in payment, should not "be regarded as property within the meaning of the income tax law." Neither the Tax Court's theory nor my colleagues' seems to me consonant with the statutory mandate that "compensation * * * in whatever form paid" be included in the attorney's income for the year of payment —in the case at bar 1931.

It is true that the exact amount for which the attorney could have sold the partial assignment immediately after his receipt of it on November 18, 1931 was not proved; but that it had some value seems to me indisputable. The McArdle Estate had assets of some $400,000 and the allowed claims totaled less than $140,000. The uncertainty as to the date when the Surrogate would order payment of the judgment awarded the Lynch sisters, and the possibility that certain devisees might thereafter appeal, as they did on December 1, 1931, were perhaps enough "evidence to the contrary" to preclude application of the presumption declared in Article 53 of the Regulations that the fair value of the partial assignment was the stipulated price of the services, but these considerations are not enough to support a finding that it had no value "in the year received or at any time prior to the death of the decedent." [1]

---

[1] Certainly in 1935 it had a value of at least the sum then paid, namely, $1,839.50.

Whatever its value in 1931 should have been returned as income in that year, and any sum in excess of such value realized in 1940, when cash of $5,000 was received, should, in my opinion, be reported as a gain realized on an asset of the decedent's estate.

I do not read the cases cited in the majority opinion as pointing to a contrary conclusion. The obtaining of a judgment by a creditor against his debtor is not a payment of the creditor's claim. But if the judgment creditor assigns the judgment, or a part of it, to his attorney in payment for fees, I can see no reason why the value of the thing assigned is not realized as income whether the property assigned be an undivided interest in real estate, a part of a judgment against a debtor, or the promissory note of a third party. I think the order should be reversed.