The ISMERT–HINCKE MILLING COMPANY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 5542.

United States Court of Appeals Tenth Circuit.

July 11, 1957.

Robert E. Rosenwald, Kansas City, Mo. (Philip L. Levi and Joseph Cohen, Kansas City, Kan., on the brief), for appellant.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson and Walter Akerman, Jr., Attys., Dept. of Justice, Washington, D. C., and William C. Farmer, U. S. Atty., Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from a judgment denying a claim for refund of corpora- tion income and excess profits taxes for the fiscal year ending May 31, 1946. The question presented is whether the taxpayer sustained a loss in that fiscal year entitling it to a deduction under § 23(f) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(f).

The taxpayer, the Ismert-Hincke Milling Company,[1] is a Kansas corporation, having its principal place of business at Kansas City, Missouri. Victor M. Hinojosa was a citizen of Mexico. He resided at Kansas City, Missouri from about 1933 until 1952. During the years 1945 and 1946 he maintained an office in the Board of Trade Building in Kansas City, Missouri and did business under the name Pan-American Trading Company. From 1937 until December 31, 1948, he was director of the Milling Company's export department and in its name and on its behalf handled all of its foreign transactions. During that period, and acting within the scope of his authority so to do, he carried on all correspondence with respect to foreign transactions, including the writing of letters and telegrams on behalf of the Milling Company. All communications received by the Milling Company from abroad during that period were directed by it to him for attention and response. The Milling Company furnished him with letterheads with the name "Ismert-Hincke Milling Co., Kansas City, U. S. A." at the top and upon which was imprinted in the upper left-hand corner, "Departamento de Exportacion V. M. Hinojosa, Director."

In July, 1945, a Spanish corporation, Sociedad Orbea, S. A.,[2] with its principal office at Tangier, Morocco, made inquiry of the Milling Company concerning the purchase of a quantity of flour. The inquiry was made through Orbea's agent, Bernardo Orive Riano, who was engaged in the import and export business at Las Palmas, Canary Islands. It was referred by the Milling Company to Hinojosa. After extended negotiations, an agreement for the purchase of flour

---

1. Hereinafter referred to as the Milling Company.

2. Hereinafter called Orbea.

by Orbea from the Milling Company was entered into with Hinojosa, acting on behalf of and with authority of the Milling Company. However, on September 1, 1945, on the Milling Company letterhead, Hinojosa wrote Orbea that arrangements for the shipment of the flour were being made through the Pan-American Trading Company, which Hinojosa represented to Orbea to be the export department of the Milling Company. On September 4, 1945, Hinojosa, acting for the Milling Company, sent a wire to Orbea, directing that an irrevocable letter of credit should be opened in the name of Pan-American Trading Company of Kansas City, Missouri. The original negotiations contemplated the purchase of 75,000 bags of flour. However, further negotiations resulted in an agreement for the sale of 10,000 bags of flour by the Milling Company to Orbea for $30,000 cash, and thereupon, on October 2, 1945, Orbea transmitted to Commerce Trust Company of Kansas City a bank draft in the sum of $30,000, payable to the Pan-American Trading Company, as a prepayment for the 10,000 bags of flour. Hinojosa receipted for the $30,000 in the name of the Pan-American Trading Company and deposited it to the Pan-American Trading Company account in the Commerce Trust Company. Subsequently, at different times in October, November, and December, 1945, Hinojosa, as export director of the Milling Company, and on the stationery of the Milling Company, acknowledged to Orbea that the Milling Company had received the sum of $30,000. However, Hinojosa failed to remit the $30,000 to the Milling Company and withdrew the proceeds from the Pan-American Trading Company account and appropriated them to his own use, during the Milling Company's fiscal year, ending May 31, 1946. During that fiscal year Orbea made demands of Hinojosa that the Milling Company return the $30,000. The Milling Company made no delivery of flour to Orbea during such fiscal year or thereafter.

After the lapse of several years, the Milling Company received actual notice that Orbea, on October 2, 1945, remitted the sum of $30,000 to the Pan-American Trading Company, pursuant to Hinojosa's direction. Thereafter, and in August, 1950, Orbea instituted suit against the Milling Company for the sum of $30,000, with interest, in the United States District Court for the Western Division of Missouri. Unavailing efforts were made to cause Hinojosa to pay the sum into court. In the answer filed in the case, the Milling Company denied that Hinojosa was its agent and denied that it was liable to Orbea for the payment made to Pan-American Trading Company. It was not until long after the Milling Company had filed its answer in the Orbea action that it acquired full information surrounding the transaction between Orbea and Hinojosa. On October 14, 1953, after elaborate preparations had been made for the trial of the Orbea action and pursuant to a release agreement entered into by the parties to that action, judgment for $20,000 was entered in favor of Orbea and against the Milling Company and satisfaction of the judgment was acknowledged in open court.

In the meantime, Hinojosa was convicted in a state court of Missouri of manslaughter for a death which had occurred on December 3, 1948. He was sentenced to a term of 10 years. He was released on bond pending appeal and fled to the Republic of Mexico. His conviction was affirmed [3] and his bond was forfeited.

The Milling Company filed a timely corporation income and declared value excess profits tax return on Form 1120 and a timely corporation excess profits tax return on Form 1121 for the fiscal year ending May 31, 1946. These returns did not reflect as income of the Milling Company the $30,000 received by Hinojosa from Orbea. Neither did they reflect a liability to Orbea on account of the payment of $30,000 to the Pan-American Trading Company. Subse-

3.  State v. Hinojosa, Mo., 242 S.W.2d 1.

quently, upon audit of these returns, deficiency assessments were made against the Milling Company. The Milling Company paid the deficiency assessments, as recomputed, with penalties.

On March 28, 1952, the Milling Company filed a claim for refund for corporation excess profits tax and penalties in the amount of $16,488.67, plus interest, and for corporation income and declared value excess profits taxes and penalties in the amount of $12,080.44, plus interest, which was disallowed.

The precise issue presented is whether the Milling Company suffered a loss by reason of Hinojosa's alleged embezzlement in the fiscal year ending May 31, 1946.

■ It is well settled that "the general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test." [4] A loss resulting from an embezzlement is ordinarily deductible in the year in which the embezzlement occurred, although discovery of the embezzlement is not made until a later date.[5] But the rule is not inflexible. "Whether and when a deductible loss results from an embezzlement is a factual question, a practical one to be decided according to surrounding circumstances." [6] In referring to an alleged embezzlement loss the court, in Burnet v. Huff, 288 U.S. 156, 53 S.Ct. 330–332, 77 L.Ed. 670, said: "The loss must be actual and present." [7] And in Boehm v. Commissioner, 326 U.S. 287, 292, 66 S.Ct. 120, 123, 90 L.Ed. 78, the court said: " * * * a loss, to be deductible under § 23(e), must have been sustained *in fact* during the taxable year. * * * "

■ The contract for sale of 10,000 bags of flour, entered into by Hinojosa with Orbea on behalf of the Milling Company, was binding on it. Hinojosa received the check for $30,000 from Orbea in behalf of the Milling Company as its agent, although he caused the check to be made payable to the Pan-American Trading Company. We conclude, therefore, that the proceeds of the check were the property of the Milling Company and that the misappropriation thereof by Hinojosa constituted an embezzlement. The moneys when embezzled by Hinojosa were not general funds of the Milling Company, entrusted to him, but the specific moneys that were prepaid by Orbea for the 10,000 bags of flour.

While the record is not specific as to the date the flour was to be delivered, we are of the opinion that it is a fair and reasonable inference from the evidence that the flour was to be delivered shortly after the receipt of the check and during the fiscal year ending May 31, 1946.

■ We are of the opinion that the contract of sale and the payment of the purchase price imposed a legal obligation on the Milling Company to deliver the flour to Orbea and when it failed to deliver the flour, although unintentionally, it breached the contract of sale and became liable to Orbea for such breach. But it was a liability which the Milling Company denied and resisted when asserted.

However, since the Milling Company did not deliver any flour, it suffered no immediate loss by reason of the embezzlement and none would have accrued to it, unless and until Orbea asserted and recovered on its claim arising by reason of the nondelivery of the flour.

■■ Moreover, the Milling Company denied any liability to Orbea and resisted the latter's claim up to the eve of the trial of the action brought by Orbea against the Milling Company. Where a taxpayer on an accrual basis predicates

---

**4.** See Lucas v. American Code Co., Inc., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538; Burnet v. Huff, 288 U.S. 156, 161, 53 S.Ct. 330, 77 L.Ed. 670.

**5.** Alison v. United States, 344 U.S. 167, 169, 73 S.Ct. 191, 97 L.Ed. 186.

**6.** Alison v. United States, 344 U.S. 167, 170, 73 S.Ct. 191, 192, 97 L.Ed. 186; Boehm v. Commissioner, 326 U.S. 287, 292, 293, 66 S.Ct. 120, 90 L.Ed. 78.

**7.** See also Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720.

a claim of loss upon a liability asserted against him and in an action brought to enforce the claim of liability, denies such liability and contests the action, the liability is rendered uncertain and the taxpayer may only claim a deduction in the taxable year in which its liability is finally adjudicated.[8]

The Milling Company suffered no loss by reason of the embezzlement until it consented to a judgment in the action brought by Orbea, which judgment was immediately satisfied. The actual loss was not the full $30,000 embezzled, with interest, but the $20,000 it paid to Orbea.

Accordingly, we conclude that no loss accrued to the Milling Company from the embezzlement until October 14, 1953, when the amount of Orbea's claim was definitely adjudicated and satisfied.

Affirmed.

8. Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 519, 64 S.Ct. 364. 88 L.Ed. 270; Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 284, 64 S.Ct. 596, 88 L.Ed. 725.