**UNITED STATES of America,**

v.

**DELTA AIR LINES, Inc.**

**No. 16868.**

United States Court of Appeals
Fifth Circuit.

May 23, 1958.

Rehearing Denied June 24, 1958.

John N. Stull, Acting Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Sheldon I. Fink, Atty., Floyd M. Buford, Asst. U. S. Atty., Washington, D. C. (Frank O. Evans, U. S. Atty., Jack J. Gautier, Asst. U. S. Atty., Macon, Ga., on the brief), for appellant.

James N. Frazer, Elliott Goldstein, Atlanta, Ga., Richard S. Maurer, William Linkous, Jr., Atlanta, Ga., Attys., Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., of counsel, for appellee.

Before JONES, BROWN and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The appellee, Delta Air Lines, Inc., here sometimes called Delta, is an air carrier of passengers, freight and mail. It operated Route 24 between Texas and South Carolina, serving points in those states and in those lying between them. Over this route Delta transported mail under a contract with the Postmaster General. The Interstate Commerce Commission fixed a rate of 29 cents per airplane mile for transporting a mail load not exceeding 300 pounds with a base mileage of 105,000 miles per month. The Civil Aeronautics Act of 1938, 52 Stat. 977, 49 U.S.C.A. § 401 et seq., was enacted in June of that year. Delta was issued a Certificate of Public Convenience and Necessity by the Civil Aeronautics Authority, here sometimes called the C. A.A. Section 405(a) of the Act provided that prior contracts for mail carriage should be continued on conditions there provided and that the Postmaster General should make payments at the contract rate or the rate fixed by the Interstate Commerce Commission. Under authorizing provisions of the Act [1] the C.A. A., on December 1, 1939, instituted upon its own initiative a proceeding to determine whether the compensation being paid to Delta for transporting mail was fair and reasonable. During the pendency of this proceeding Delta received payment for mail carriage at the 29 cent pay-mile rate.[2] Delta filed its Federal income tax returns on an accrual basis. During the period of the mail rate proceeding Delta accrued and paid tax on its mail transportation earnings at the 29 cent rate.

On January 29, 1942, the Civil Aeronautics Board, here called the C.A.B., successor to the C.A.A., promulgated an order fixing a mail rate for Delta of 31 cents per pay-mile for the period beginning December 1, 1939, and terminating July 14, 1941. The amount of addi-

1. "(a) The Authority is empowered and directed, upon its own initiative or upon petition of the Postmaster General or an air carrier, (1) to fix and determine from time to time, after notice and hearing, the fair and reasonable rates of compensation for the transportation of mail by aircraft, the facilities used and useful therefor, and the services connected therewith (including the transportation of mail by an air carrier by other means than aircraft whenever such transportation is incidental to the transportation of mail by aircraft or is made necessary by conditions of emergency arising from aircraft operation), by each holder of a certificate authorizing the transportation of mail by aircraft, and to make such rates effective from such date as it shall determine to be proper; (2) to prescribe the method or methods, by aircraft-mile, pound-mile, weight, space, or any combination thereof, or otherwise, for ascertaining such rates of compensation for each air carrier or class of air carriers; and (3) to publish the same; and the rates so fixed and determined shall be paid by the Postmaster General from appropriations for the transportation of mail by aircraft.

"(b) In fixing and determining fair and reasonable rates of compensation under this section, the Authority, considering the conditions peculiar to transportation by aircraft and to the particular air carrier or class of air carriers, may fix different rates for different air carriers or classes of air carriers, and different classes of service. In determining the rate in each case, the Authority shall take into consideration, among other factors, the condition that such air carriers may hold and operate under certificates authorizing the carriage of mail only by providing necessary and adequate facilities and service for the transportation of mail; such standards respecting the character and quality of service to be rendered by air carriers as may be prescribed by or pursuant to law; and the need of each such air carrier for compensation for the transportation of mail sufficient to insure the performance of such service, and, together with all other revenue of the air carrier, to enable such air carrier under honest, economical, and efficient management, to maintain and continue the development of air transportation to the extent and of the character and quality required for the commerce of the United States, the Postal Service, and the national defense." 49 U.S.C.A. § 486.

2. The compensation actually received by Delta for 1940, the crucial year in this controversy, was 29.16 cents per pay-mile due to the operation of more than the monthly base mileage of 105,000 miles.

tional mail transportation pay of Delta for its fiscal year ending June 30, 1940, was $43,931.86. This amount was received by Delta during its fiscal year ending June 30, 1942, and was included as income by Delta in its income tax return for that year. Delta's excess profits tax for its fiscal years ending June 30, 1944 and 1945, was measured by its net income for its fiscal year 1940. In ascertaining its 1940 base period net income for its excess profits tax computations for the fiscal years 1944 and 1945, Delta did not include the $43,931.86. If this amount was income properly accruable in 1940, its base period net income credit would be such that it would have had no excess profits tax for its fiscal years 1944 and 1945. Conversely, if the amount was not properly accruable in Delta's fiscal year 1940, then excess profits tax deficiencies existed for the fiscal years 1944 and 1945, and such deficiencies were interest bearing. If there were deficiencies for excess profits taxes for the two years, 1944 and 1945, the liability for taxes was extinguished by loss carrybacks from subsequent years, leaving the interest obligation remaining.[3] This interest, with interest thereon, in the aggregate amount of $75,363.15, was paid by Delta to the Collector of Internal Revenue. After claims for refund were filed and denied, Delta brought a suit seeking a refund of the amount of its payment. The District Court held that the pay for the fiscal year 1940 mail transportation should be accrued as 1940 income for computing base period net income for excess profits tax purposes.[4] Judgment was entered for Delta. The United States has appealed.

■ Basically, "It is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income." Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 645, 78 L.Ed. 1200. In other words it has been stated. "The uniform result

has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount." Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 599, 88 L.Ed. 725. See Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 420; Texas Trailercoach, Inc., v. Commissioner, 5 Cir., 1958, 251 F.2d 395.

■ The District Court based its decision primarily upon the precedent of Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111. There it was held that where the taxpayer has in its own books and accounts all of the data required to ascertain with reasonable accuracy the amount that would be paid, that amount should be accrued during the year in which the right was fixed. The doctrine of the Continental Tie case has been thus stated:

" * * * income may not be deferred after the right matures, even although the ministerial act of computing the amount occurs in the subsequent year, and this although the administrative procedure to ascertain the amount to be paid is that of a public commission." Dally v. Commissioner, 9 Cir., 1955, 227 F.2d 724, 726. See Irwin v. Commissioner, 3 Cir., 1956, 238 F.2d 874; Midwest Motor Express, Inc., v. Commissioner, 8 Cir., 1958, 251 F.2d 405.

The determination to be made under 49 U.S.C.A. § 486, was not one which could have been ascertained by the taxpayer with any reasonable accuracy. Factors are included in Section 486(b) which could not have been determined by the taxpayer from its books and records. Any doubt as to this will be dispelled by an examination of the opinion in Delta

---

3. Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346; United States v. Koppers Co., Inc., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302.

4. Delta Air Lines v. Edwards, D.C., 150 F. Supp. 589.

**504**

Air Lines v. Summerfield, 347 U.S. 74, 74 S.Ct. 350, 98 L.Ed. 513, rehearing denied 347 U.S. 74, 74 S.Ct. 512, 98 L.Ed. 1078, where the Supreme Court affirmed the District of Columbia Court of Appeals [5] in its reversal of a Civil Aeronautics Board order in which the Board had misconstrued the formula set forth in Section 486(b). The case involved the taxpayer's foreign operations. The rule stated in Continental Tie & Lumber Co. v. United States, supra, requires a conclusion contrary to that for which the taxpayer contends.

The judgment of the District Court is here reversed and rendered for the United States.

Reversed and rendered.

5. 92 App.D.C. 256, 207 F.2d 207.