COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

FIFTH AVENUE COACH LINES, INC., Respondent.

FIFTH AVENUE COACH LINES, INC., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 271, Docket 25986.

United States Court of Appeals Second Circuit.

Argued April 11, 1960.

Decided July 29, 1960.

William J. Howard, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Paul R. Russell, of Shearman & Sterling & Wright, New York City, for taxpayer.

Before SWAN, CLARK, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

These are petitions by both the Commissioner of Internal Revenue and the taxpayer for review of a Tax Court decision, 31 T.C. 1080, sustaining in part only determinations of deficiencies in the taxpayer's income taxes for the years 1943 to 1947 and excess profits tax for the year 1943. The taxable year 1948 is involved only in so far as the earlier years are affected by a net operating loss deduction from 1948 and a carry-back of unused excess profits credits. Taxpayer, an operator of motor coaches in Manhattan, reports its income on a calendar year accrual basis. Both petitions require a determination of the year in which certain deductions, to which taxpayer is concededly entitled, accrued for tax purposes.

## I. The Commissioner's Petition for Review.

The Commissioner seeks review of the Tax Court's allowance of a deduction for unpaid interest on certain tax deficiencies. The question arises from earlier litigation in the Tax Court which determined deficiencies for the years 1937 to 1939. Taxpayer's income and excess profits taxes for the years 1940 to 1947 were also affected by the determination, as the major item in dispute was the cost basis of its bus franchise for amortization purposes. See C. I. R. v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92

L.Ed. 898. The Tax Court rendered its opinion in the case on November 30, 1948, and the decision was formally entered on December 22, 1948. New York City Omnibus Corp. v. C. I. R., 17 P-H Tax Ct.Mem. 803 (1948). The court found that the cost basis of the franchise was that determined in the deficiency notice, upheld the Commissioner as to the date on which amortization should commence, and upheld the taxpayer as to the longevity of its motor buses, the taxability of net earnings which taxpayer was required by court order to turn over to another company, and the deductibility of a reserve for accident and damage claims. Since neither the Commissioner nor the taxpayer appealed, the Tax Court decision became final on March 22, 1949. See I.R.C.1939, §§ 1140, 1142.

On December 30, 1948, the taxpayer mailed certified checks totaling $1,355,727.97 to the Collector of Internal Revenue. This amount represented deficiencies and interest for the years 1937 to 1942. Taxpayer also accrued on its books and deducted on its 1948 tax return the amount of $109,802.30 as interest on deficiencies for the years 1943 to 1947. It is this accrual which is here in issue. The Tax Court found that, although there was no clear admission of liability by reason of the payments in 1948,[1] it was extremely unlikely that the decision would be appealed. From this it concluded that the interest liability resulting from the 1948 decision was substantially fixed and unconditional in that year, so that accrual of the expense was justified. The decision was written by Judge Train and was reviewed and accepted by the full court, but Judge Harron filed a dissenting opinion, 31 T.C. 1080, 1104, with which we find ourselves in accord.

On the issue of likelihood of appeal there was evidence that prior to Decem-ber 31, 1948, taxpayer's comptroller-vice-president, after conferring with tax counsel, advised its president that an appeal should not be prosecuted. The minutes of a meeting of the board of directors on February 25, 1949, disclosed a statement by a board member that an appeal should not be prosecuted unless the Commissioner appealed, in which event a cross-appeal should be filed. This board member, the senior partner of a law firm representing taxpayer in tax matters, although not in the particular litigation, indicated that he had previously recommended this course to taxpayer's officers. The Tax Court also stressed the fact that its 1948 decision respecting the cost basis of the bus franchise "was based on findings of fact established by voluminous conflicting evidence," 31 T.C. 1080, 1102, although it should be noted that the court specifically had refused to include in the cost basis a number of items for which the taxpayer had contended. Upon consideration of the above-mentioned evidence the Tax Court found that, although taxpayer "did not decide not to appeal until sometime in 1949," it "did not contemplate appealing" as of December 31, 1948. 31 T.C. 1080, 1101.

While we agree that as of the end of the year 1948 it was more likely that taxpayer would not appeal than the contrary, it is unnecessary to decide the degree of remoteness of the probability of appeal, since we are of the opinion that the test adopted by the Tax Court was erroneous. The controlling principle is that enunciated by the Supreme Court in Dixie Pine Products Co. v. C. I. R., 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270: "It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebted-

---

1. The effect of the remittance would be to stop the running of interest on the particular deficiencies, but it would not preclude the taxpayer from continuing the litigation. See I.R.C.1939, §§ 292, 1145, 1146. See also Lewyt Corp. v. C. I. R., 2 Cir., 215 F.2d 518, modified on other grounds 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029; Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535; Arheit v. C. I. R., 31 T.C. 46.

ness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer. \* \* \* [The taxpayer must] await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated."

We think it clear that taxpayer's liability for the tax deficiencies, and thus the interest thereon, was not "finally adjudicated" in 1948. As the Ninth Circuit concluded in H. Liebes & Co. v. C. I. R., 9 Cir., 90 F.2d 932, 938, "If appeal is taken, the right is not fixed until determination of the appeal; and if no appeal is taken, \* \* \* the right becomes fixed on termination of the appeal time." Or as picturesquely stated in United States v. Texas Mexican Ry. Co., 5 Cir., 263 F.2d 31, 34, "the existence of any liability is uncertain until the last bell is rung in the last court."[2] See also United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S. Ct. 613, 76 L.Ed. 1197; Lynch's Estate v. C. I. R., 2 Cir., 150 F.2d 747, 162 A.L. R. 313, certiorari denied 326 U.S. 780, 66 S.Ct. 336, 90 L.Ed. 472. To the extent that accounting principles are persuasive,[3] we note that the American Institute of Accountants has voiced its approval of the rule that contested or litigated liabilities such as tax deficiencies are deductible in the year in which the contest is resolved. See Recommendations to Congress by the American Institute of Accountants Regarding Divergen-

cies Between Rules of Tax Accounting and Generally Accepted Accounting Principles, 97 J.Accountancy 93, 96 (1954).

While such a determinate standard might be deemed mechanical, by the same token it offers a clear guide to the taxpayer, promotes ease of administration, and contributes to the certainty of the revenue. Slight difficulty is imposed upon a taxpayer who desires an earlier deduction, since the right to appeal can be relinquished at any time by notifying the Commissioner of acquiescence. We thus see neither theoretical nor practical justification for introducing the complexities involved in determining reasonableness of expectation of appeal. As Judge Harron noted in her dissent, the decision therein would permit a taxpayer to choose the most advantageous year for accruing a deduction. Certainly taxpayer could have deducted the interest payment in 1949 without encountering any opposition from the Commissioner. The opportunity for manipulation is enhanced where, as here, taxpayer relies primarily upon evidence of private conversations among its officers, uncommunicated to any third party. The Supreme Court has continually denied both the Government and the taxpayer "the privilege of allocating income or outgo to a year other than the year \* \* .\* in which the right to receive, or the obligation to pay, has become final and definite in amount." Security Flour Mills Co. v. C. I. R., 321 U.S. 281, 286–287, 64 S.Ct. 596, 599, 88 L.Ed. 725. While there might be exceptional situations justifying accrual prior to termination of the right to appeal, a

---

**2.** Columbus & Southern Ohio Elec. Co. v. C. I. R., 26 T.C. 722, affirmed *per curiam* 6 Cir., 244 F.2d 79, certiorari denied 355 U.S. 822, 78 S.Ct. 28, 2 L.Ed.2d 37, relied upon by taxpayer, is not contrary to the view we here adopt. There taxpayer in 1949 petitioned the Ohio Public Utilities Commission to review the electricity rate schedule adopted by the City Council and approved by the electors of Columbus, Ohio. In 1950 the taxpayer accepted in writing a compromise schedule adopted by the Council and approved by the electorate, and further agreed to join with the city in submitting

a stipulated compromise order to the Public Utilities Commission. It was held that the refunds required by the compromise agreement accrued in 1950, although the formal and apparently *pro forma* approval of the Commission was not obtained until February 7, 1951, four days after the stipulation was filed.

**3.** For a recognition of the differing attitudes and objectives of tax accounting and standard accounting practice, see Emery, Time for Accrual of Income and Expenses, 17 N. Y. U. Institute on Federal Taxation 183 (1959).

case where the taxpayer has not decided during the taxable year whether or not to appeal is not one of them.

## II. The Taxpayer's Petition for Review.

The taxpayer seeks review of the Tax Court's disallowance of an accrual for contested wage claims in the years 1946 and 1948. Taxpayer and the Transport Workers Union of America, which represented its employees, were parties to a collective bargaining agreement which expired on September 30, 1946. Prior to and following this date the parties were unable to reach agreement as to a new wage scale, but in order to continue operations they agreed on October 7, 1946, that any subsequent contract resulting from the negotiations would be retroactive to October 1, 1946. In the interim the employees continued to work at the wage scale provided in the expired contract. Negotiations continued without success until March 7, 1947, when the parties agreed to submit the dispute to arbitration. The union sought a 25-cent-per-hour increase, while the taxpayer insisted that no increase was justified. On June 18, 1947, the arbitrator promulgated his award which, *inter alia*, granted a wage increase of 6 cents per hour, retroactive to October 1, 1946.

This agreement arrived at by arbitration expired on January 31, 1948. The parties again were unable to agree upon new terms, and on January 26, 1948, they entered into an agreement similar to that of October 7, 1946. Subsequently the taxpayer agreed to a wage increase effective May 1, 1948, on the condition that the city grant a fare increase. This condition was fulfilled and petitioner increased wages by 24 cents per hour. The question of additional compensation for the interim period remained a matter of dispute, however, and the matter was finally submitted to arbitration on March 1, 1949. The union urged that the 24-cent-per-hour increase be applied retroactively, while the taxpayer adopted the position that no back pay award should be granted. On May 30, 1949, the arbitrator determined that the employees were entitled to an additional 10 cents per hour for the period February 1 to April 30, 1948.

These retroactive wage increases of 6 and 10 cents per hour were accurately estimated by taxpayer, which deducted the additional amounts as accrued wage expense in its tax returns for 1946 and 1948.[4] The Commissioner refused to allow these deductions on the ground that the taxpayer had been actively contesting the union demands, so that neither liability nor the amount thereof was reasonably established at the end of the taxable years. Taxpayer relied upon the fact that it had contracted to pay any increase that should be determined, contended that it always recognized its obligation to pay just compensation for the services rendered, and maintained that its officers were able accurately to estimate the amount of the increases. Judge Train's decision sustaining the Commissioner was upheld by the full court without dissent. 31 T.C. 1080.

■ The principle that liabilities are deductible for tax purposes only in the year in which all the events occur which fix the amount and determine the liability to pay was originally adopted in United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347. While the "all-events test" has been liberalized in certain respects, it has been consistently applied to deny tax recognition to a liability as long as it remains contested and thus contingent. As succinctly stated in Security Flour Mills Co. v. C. I. R., supra, 321 U.S. 281, 284, 64 S.Ct. 596, 597, 88 L. Ed. 725, "It is settled by many decisions that a taxpayer may not accrue an ex-

4. The accrual for 1946 was determined sometime prior to March 1947, when taxpayer closed its books for the year 1946. The estimated liability for 1948 was not accrued upon taxpayer's books, but was determined prior to the filing of its 1948 income tax return on May 13, 1949. Presumably the contingency appeared as a footnote in its annual report. It thus appears that taxpayer did not follow any uniform corporate accounting procedure in regard to such claims.

pense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting." To the same effect are Dixie Pine Products Co. v. C. I. R., 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 270, quoted supra; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; United States v. Minneapolis & St. Louis Ry. Co., 8 Cir., 260 F.2d 663, 669; Rose v. United States, 3 Cir., 256 F.2d 223; Ismert-Hincke Milling Co. v. United States, 10 Cir., 246 F.2d 754; Brainard Steel Corp. v. United States, 146 F.Supp. 461, 137 Ct.Cl. 114; Atlantic Coast Line R. Co. v. C. I. R., 4 T.C. 140. See also Cuba R. Co. v. United States, 2 Cir., 254 F.2d 280, certiorari denied 358 U.S. 840, 79 S.Ct. 64, 3 L.Ed.2d 75; Jamaica Water Supply Co. v. C. I. R., 2 Cir., 125 F.2d 512, certiorari denied 316 U.S. 698, 62 S.Ct. 1295, 86 L.Ed. 1767. Nor has our attention been directed to any case permitting the deduction of a contested liability.

Taxpayer, however, urges that it was not denying liability, but was merely engaging in customary bargaining over the amount of a recognized liability, and that it adopted as a negotiating stratagem the position that no wage increase was justified. While recognizing the plausibility of this contention, we think it proves too much, since in effect we are asked to emasculate the well-established principle that contested liabilities are nondeductible. This answer was cogently advanced by the Tax Court in the following words: "[I]t must be appreciated that, realistically, where a party to any legal proceeding, realizing that in all probability its case will not be entirely successful, denies any liability, it does so for much the same reasons that the petitioner here contends motivated it to deny liability in the arbitration proceedings. Although a party in such a case might realize its chances of success are slight, it has nonetheless contested the alleged liability. Taxation is a practical matter; the rule that has become

the law and proved workable is that truly contested liabilities are not accruable and deductible. The petitioner would have us develop an exception that would be quite impractical of application, and one that would create a departure from the usual concept of what constitutes contesting a liability." 31 T.C. 1080, 1097.

We need not, however, rest decision solely upon the inconsistent positions adopted by the taxpayer. Aside from the *post hoc* verification of taxpayer's estimates, which under our system of annual returns is not entitled to consideration, the evidence was insufficient to demonstrate that such figures could be determined with reasonably predictable accuracy. If any showing of the complex and uncertain nature of the collective bargaining process and of arbitration proceedings which are an extension thereof is required, it may be found in the following extracts from the awards granted herein in 1947 and 1949 respectively:

"At the outset, the arbitrator believes there is no simple formula or no set of rules which will uniquely and directly determine the wage dispute in this case. The parties have introduced all the standard arguments for and against a wage increase—cost of living, ability to pay, prevailing rates and productivity. They have developed, with considerable imagination, other arguments peculiar to the distinctive facts of this case. The task of the arbitrator under these circumstances must be one of balancing conflicting theories, assigning weight to various arguments, and evaluating the significance of particular facts." 31 T.C. 1080, 1087–1088.

"The Arbitrator has not attempted to note all the arguments made by the respective parties for or against an increase in wages for the three-month period in question. * * * The conclusion on this issue as hereinafter noted is based on many factors which are inextricably related. An arbitration relating to

wages and many other issues is not conducted in a vacuum. The decision cannot be reached by the application of a precise mathematical formula and there is obviously no slide-rule method upon which such a determination can be based." 31 T.C. 1080, 1089–1090.

It should also be noted that the determination of a wage schedule was complicated by differences between the parties on a number of other issues. Thus in the 1947 proceeding the union sought the establishment of a pension plan which the arbitrator granted, while noting that this decision would affect the wage determination.

The prospective wage rates were estimated by two of taxpayer's officers "on the basis of their experience, the wages being paid in the industry, the increased cost of living, and other relevant facts." 31 T.C. 1080, 1087. But we are not enlightened as to how the Commissioner or the courts are able to judge the accuracy of these unilaterally determined, subjective appraisals. For aught that appears, an estimate of one-half or of double the amount submitted would be equally unassailable. The 1947 arbitration proceeding required 22 days of hearings; and a similar quantum of evidence would seem requisite to arrive at an informed judgment as to the reasonableness of taxpayer's estimates. Even aside from the obvious impracticality of litigating before the Commissioner and the Tax Court the amount of compensation to which employees are entitled, it seems doubtful whether the result thereof would amount to more than an educated guess. See United States v. Delta Air Lines, Inc., 5 Cir., 255 F.2d 501, certiorari denied 358 U.S. 882, 79 S.Ct. 122, 3 L.Ed.2d 111. Further, if the taxpayer had deemed the deductions more advantageous in 1947 and 1949, the Commissioner certainly would have been unable to demonstrate that a reasonable estimate could have been reached in 1946 and 1948. Thus in practical effect the taxpayer seeks an option to deduct such amounts in whichever taxable year is the more favorable.

Reliance is placed by the taxpayer upon a number of recent cases in the courts of appeals which reflect a liberal trend toward permitting the accrual of reasonably ascertainable liabilities in order to equate the expenses incurred in producing current income with such income. While we find ourselves in general accord with such authority, none of these opinions support the deduction here sought. Thus the accrual of brokerage fees, labeling, packaging, and shipping costs to be incurred as a result of sales of canned goods during the taxable year was approved in Pacific Grape Products Co. v. C. I. R., 9 Cir., 219 F.2d 862, 868, where the taxpayer demonstrated "that the items making up these expenses were either precisely known or determinable with extreme accuracy." Similarly in Central Cuba Sugar Co. v. C. I. R., 2 Cir., 198 F.2d 214, certiorari denied 344 U.S. 874, 73 S.Ct. 167, 97 L.Ed. 677, a deduction for accrued brokerage commissions was allowed, since the amount thereof was fixed, subject only to "insubstantial" adjustments.

In Denise Coal Co. v. C. I. R., 3 Cir., 271 F.2d 930, taxpayer, a coal mine operator under a statutory duty to refill and rehabilitate land devastated by its strip mining, set up a reserve for such liability based upon detailed engineering studies verified by the estimates of independent contractors. Upon this evidence of the reasonable accuracy of the estimate, the court held that accrual was proper. To similar effect is Harrold v. C. I. R., 4 Cir., 192 F.2d 1002. These same circuits, however, have not hesitated to deny a deduction for similar liabilities where there was an inadequate demonstration of reasonable accuracy. See Jenkins v. C. I. R., 3 Cir., 217 F.2d 951; C. I. R. v. Gregory Run Coal Co., 4 Cir., 212 F.2d 52, certiorari denied Gregory Run Coal Co. v. C. I. R., 348 U.S. 828, 75 S.Ct. 47, 99 L.Ed. 653; Patsch v. C. I. R., 3 Cir., 208 F.2d 532.

An analogous distinction was recently adopted by this court in Bressner Radio, Inc. v. C. I. R., 2 Cir., 267 F.2d 520, 528, involving the deferral of prepaid income.

There, in contrast to Automobile Club of Michigan v. C. I. R., 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, the court was convinced that the method of deferral was reasonably accurate. The taxpayer, "[d]rawing on its experience with thousands of contracts * * * demonstrated that it was subjected to a reasonably uniform demand for services, so that it could and did anticipate that the expenses incident to the performance which alone would entitle it to regard the sum received as earned would be distributed across the life of the contract." Schuessler v. C. I. R., 5 Cir., 230 F.2d 722, and Beacon Pub. Co. v. C. I. R., 10 Cir., 218, F.2d 697, illustrate the same principle. No such evidence of reasonably predictable accuracy has here been adduced. See also Capital Warehouse Co. v. C. I. R., 8 Cir., 171 F.2d 395; Spencer, White & Prentis, Inc. v. C. I. R., 2 Cir., 144 F.2d 45, certiorari denied 323 U.S. 780, 65 S.Ct. 269, 89 L.Ed. 623. The situation here presented may be contrasted with that considered by this court in Consolidated Edison Co. of New York v. United States, 2 Cir., 279 F.2d 152, which involved a deduction for contested real estate taxes. Although the court was there divided as to the effect of *payment* of the disputed amount, no member of the panel suggested that accrual should be based upon an estimate of the outcome of the litigation, although taxpayer's officers and tax counsel undoubtedly could have advanced such an appraisal.

The decision of the Tax Court is thus reversed on the Commissioner's petition and affirmed on the taxpayer's cross-petition.

FRIENDLY, Circuit Judge (dissenting).

A current law review comment, under the heading "Tax Accounting: The Timing of Income and Deductions," has this to say: "While tax men are prone to refer to many parts of the tax law as a 'jungle,' it is to this area that the term is applied with the greatest force and frequency." Lyon, Federal Income Taxation, 35 N.Y.U.L.Rev. 697, 715 (1960).

See also Freeman, Tax Accrual Accounting for Contested Items, 56 Mich.L.Rev. 727 (1958); Note, Accrual: The Uncertain Concept of Certainty—A History of the All Events Test, 21 U.Chi.L.Rev. 293 (1954).

This Court has recently taken important steps toward clearing the "jungle," see Central Cuba Sugar Co. v. Commissioner, 2 Cir., 1952, 198 F.2d 214, certiorari denied 1952, 344 U.S. 874, 73 S.Ct. 167, 97 L.Ed. 677; Bressner Radio, Inc. v. Commissioner, 2 Cir., 1959, 267 F.2d 520; Consolidated Edison Co. of New York v. United States, 2 Cir., 1960, 279 F.2d 152, as have other Courts of Appeals, Harrold v. Commissioner, 4 Cir., 1951, 192 F.2d 1002; Denise Coal Co. v. Commissioner, 3 Cir., 1959, 271 F.2d 930. This case affords an opportunity for further progress; I regret to see this lost.

Section 29.43–2 of Treasury Regulations 111 issued under the 1939 Code, which here controls, lays out the ground rules as follows:

"Sec. 29.43–2. When charges deductible—Each year's return, so far as practicable, both as to gross income and deductions therefrom, should be complete in itself, and taxpayers are expected to make every reasonable effort to ascertain the facts necessary to make a correct return. The expenses, liabilities, or deficit of one year cannot be used to reduce the income of a subsequent year. A taxpayer has the right to deduct all authorized allowances, and it follows that if he does not within any year deduct certain of his expenses, losses, interest, taxes, or other charges, he can not deduct them from the income of the next or any succeeding year. It is recognized, however, that particularly in a going business of any magnitude there are certain overlapping items both of income and deduction, and so long as these overlapping items do not materially distort the income they may be included in the year in which the taxpayer, pursuant to a

consistent policy, takes them into his accounts. Judgments or other binding adjudications, such as decisions of referees and boards of review under workmen's compensation laws, on account of damages for patent infringement, personal injuries, or other cause, are deductible from gross income when the claim is so adjudicated or paid, unless taken under other methods of accounting which clearly reflect the correct deduction, less any amount of such damages as may have been compensated for by insurance or otherwise. * * * "

The thrust of the Regulation seems to be that the taxpayer must be industrious to "ascertain the facts" and to take "all authorized allowances" just as soon as he can. The Regulation warns him that " * * * if he does not within any year deduct certain of his expenses, losses, interest, taxes, or other charges, he can not deduct them from the income of the next or any succeeding year." Anyone reading all this without the glosses, many of them inconsistent, that have been encrusted on it and its predecessors by courts and commentators, would suppose that an accrual basis taxpayer who took a deduction for expenses paid or incurred which his auditors would require him to take in the taxable year, would be doing just what the Regulation adjured. I do not believe that any decisions of the Supreme Court or of this Court forbid us from applying the Regulation in that spirit to the Fifth Avenue Coach Lines.

Consider first the interest on the tax deficiencies for 1943–47. All the facts establishing the amount of the tax deficiencies and consequently of the interest thereon were determined in the Tax Court's decision of December 22, 1948, which found deficiencies for 1937–39. Before the end of 1948 taxpayer indicated its acquiescence in that determination by filing amended returns for 1940–42 and by paying the deficiencies and interest both for 1937–39 and for 1940–42. It is not suggested that the deficiencies for 1943–47 and the interest thereon stood on any different footing from those for the earlier years; the only reason why these also were not paid in 1948 was that time did not permit calculation of the exact amount due. However, it is settled that the absence of such a calculation during the calendar year, or even the inability to make one, does not destroy the deduction. United States v. Anderson, 1926, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347; Continental Tie & Lumber Co. v. United States, 1932, 286 U.S. 290, 297, 52 S.Ct. 529, 76 L.Ed. 1111.

We are told that nevertheless the deduction must be denied because taxpayer had not formally advised the Commissioner during 1948 of its intention not to appeal, even though the Tax Court has found as a fact that taxpayer had acquiesced before the end of the year.[1] Yet,

1. Reference is made to the minutes of a meeting of taxpayer's board of directors on February 26, 1949, recording that "Mr. Boykin C. Wright stated that after consultation with the officers of the Corporation in regard to the advisability of appealing from the decision of the Tax Court, he had recommended that the corporation should not appeal unless the Commissioner of Internal Revenue should appeal, in which case he believed that the Corporation should file a cross-appeal." To me this refers to advice given in December, 1948, by Mr. Wright, who had died before the Tax Court hearing, rather than meaning that this was his position, much less the company's, in February, 1949. Taxpayer's vice-president and comptroller testified that, after having conferred with counsel in December, 1948, he discussed the matter with the company's president, that they reached a definite decision not to appeal, that a government appeal would not have altered his own conclusions not to appeal, and that despite a government appeal "we would still have gone through giving us [sic] the right to appeal when we made our decision to pay the deficiency and the interest accrued up until that time." Certainly the Tax Court's finding that "Petitioner had acquiesced in this Court's decision, and the liability for the interest was not being contested and was finally determined as of the end of 1948" was not clearly erroneous.

as the majority recognize (fn. 3), actual payment of the deficiency and interest during 1948 would not have precluded an appeal, and I know of no authority that a letter announcing an intention not to appeal would have had any greater preclusive effect, at least if it were withdrawn sufficiently before the expiration of the three months' period, Internal Revenue Code of 1939, § 1142, so that the Commissioner would not have been prejudiced by relying on it in making his own decision not to appeal. The effect of such a letter would thus have been only evidentiary. The Tax Court thought this additional evidence unnecessary to find that the dispute was no longer being contested, and its finding is entitled to the usual respect. Casey v. Commissioner, 2 Cir., 1959, 267 F.2d 26, 30–31. The majority must thus be ruling that nothing short of a formal stipulation or the running of the time to appeal will suffice; I see nothing in the statute or regulations to warrant this. The only Supreme Court decisions that come near this phase of the case, Dixie Pine Products Co. v. Commissioner, 1944, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 and Security Flour Mills v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, do not demand such a mechanical view; in those cases taxpayer was contesting liability all along and ultimately won. Neither do decisions in other Circuits, which, of course, do not bind us in any event. Although in United States v. Texas Mexican Ry. Co., 5 Cir., 1959, 263 F.2d 31, 34, Judge Wisdom makes the picturesque observation that "the existence of any liability is uncertain until the last bell is rung in the last court," the fact was that the taxpayer was vigorously contesting the liability, as in Dixie Pine and Security Flour Mills. H. Liebes & Co. v. Commissioner, 9 Cir., 1937, 90 F.2d 932, is distinguishable since it involved the accrual of income by the taxpayer rather than a deduction, as here, and the person who had not decided whether to appeal was the party from whom the income would come; to analogize this to the instant case, where it was for the taxpayer to decide to give up, seems to confound the fisherman with the fish.

Although the deduction for the prospective wage liability is more questionable and perhaps would go beyond any case yet decided, I think that it is not forbidden by any authority binding upon us and that the taxpayer's position accords better with the statute and regulation than the Commissioner's. Any responsible auditor concerned with "the matching of costs and expenses against income," American Institute of Accountants, Audits by Certified Public Accountants, Their Nature and Significance (1950), p. 12, would have insisted on provision for this liability in the accounts for the years when the employees' services were rendered. Mr. Justice Brandeis said in Brown v. Helvering, 1934, 291 U.S. 193, 200, 54 S.Ct. 356, 359, 78 L.Ed. 725, "that, where a liability has 'accrued during the taxable year', it may be treated as an expense incurred; and hence as the basis for a deduction, although payment is not presently due * * * and although the amount of the liability has not been definitely ascertained." In my view taxpayer's "liability" for 1946 accrued at least by October 7, 1946, when it entered into an agreement with the union that any new contract would be retroactive to October 1, 1946, and its "liability" for 1948 accrued on January 26, 1948, when the taxpayer and the union agreed that any contract would be retroactive to February 1, 1948. To be sure, the amount of the liability was uncertain; in theory it might have proved to be zero, but in theory only, however much taxpayer may have desired this result and even have gone through the motions of seeking to accomplish it. Average hourly earnings for street railway and bus workers had increased by 5¢ per hour from March, 1946, the date of the last determination between taxpayer and its workers, to September, 1946, Bureau of Labor Statistics, Monthly Labor Review, and the Consumer Price Index had rocketed from 130.2 to 146. Again, from the

arbitrator's award in June, 1947, to January, 1948, average hourly earnings in the industry climbed another 8.7¢ and the Consumer Price Index from 157 to 169. To compare negotiations or arbitrations over wages with litigations over taxes or other contested liabilities appears quite as unrealistic as a similar attempt at analogizing labor arbitration provisions with those in other types of contracts was recently held to be, United Steelworkers of America v. Warrior and Gulf Navigation Co., 1960, 80 S.Ct. 1347, 1363, 4 L.Ed.2d 1409, 1432.

No decision of the Supreme Court or of this Court seems to me to require a disallowance here. The deduction disallowed in Brown v. Helvering, supra, was for the establishment of a reserve against income which taxpayer feared might not remain his; Lucas v. American Code Co., 1930, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, involved contested damages for the breach of an executory contract for personal services for 18 years prospective duration; Dixie Pine Products Co. v. Commissioner, supra, and Security Flour Mills Co. v. Commissioner, supra, have been discussed above; and Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 188–190, 77 S.Ct. 707, 1 L.Ed.2d 746, rested on the lack of proof that taxpayer's method of spreading the dues income properly reflected the facts, as this Court recognized in Bressner Radio, Inc. v. Commissioner, supra, 267 F.2d at page 528. Unless Spencer, White & Prentis, Inc. v. Commissioner, 2 Cir., 1944, 144 F.2d 45, certiorari denied, 1944, 323 U.S. 780, 65 S.Ct. 269, 89 L.Ed. 623, is similarly distinguishable, it is inconsistent with Bressner Radio. Here the employees had rendered the services during the taxable year; the company owed for these services whatever sums negotiation or arbitration might determine; and it had a very shrewd idea what its bill would be, as witness the absolute accuracy of its estimates. This was not happenstance. Persons concerned with labor matters keep themselves well informed of the trend of wage settlements and arbitrations and the industry pattern is fairly consistent. All that is required is a reasonable estimate; indeed, that is all we actually have for a great many items in corporate financial statements, despite their appearance of exactness.[2] If the law requires deduction of such a liability on an estimated basis in the year in which the liability is incurred, as I think it does, the taxpayer does not have the free election between years that the majority assumes, and I doubt the nation will perish if taxpayers do have it within their power to overshoot or undershoot the deduction for wages in a particular year by a few cents per hour. Certainly, in an inflationary economy[3] the deduction of a reasonable estimate of this expense comes far closer to the clear reflection of income demanded by § 41 of the 1939 Code than making none. In Consolidated Edison Co. of New York v. United States, supra, this Court allowed a taxpayer to deduct an amount estimated, on no more scientific a basis, to be its liability for city taxes in the year in which these accrued as against the government's contention that it must deduct the full amount assessed. I grant that the Consolidated Edison Co. did not challenge the city's right to the estimated tax whereas here the practicalities of labor negotiation and arbitration forced the Fifth Avenue Coach Lines to assume a more bellicose stance, although it knew full well that this posture would not pre-

---

2. "Actually, the values of most items in financial statements cannot be measured exactly. By their nature, many of the amounts shown have to be approximations and represent the best estimate which those responsible for the statements can make." American Institute of Accountants, Audits by Certified Public Accountants, Their Nature and Significance (1950), p. 10.

3. For the ten-year period, 1949–59, the annual rate of depreciation of the dollar (compounded), determined by reciprocals of the consumer price index, has been 2%. See First National City Bank Monthly Letter, July, 1960.

vail and recorded its true views of its liability on its books, as good accounting practice required. I do not think the difference requires a different result; in tax matters particularly, substance should prevail.

I would affirm on the Commissioner's petition and reverse on taxpayer's cross-petition.