### TAYLOR-LOGAN CO. v. WHITE, Internal Revenue Collector.

### No. 2727.

Circuit Court of Appeals, First Circuit.
Dec. 29, 1932.

Russell L. Davenport, of Holyoke, Mass. (Nathan P. Avery, of Holyoke, Mass., on the brief), for appellant.

Ralph E. Updike, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an action at law brought by the plaintiff-appellant, "Taylor-Logan Co., Papermakers," against Thomas W. White, United States collector of internal revenue for the district of Massachusetts, to recover the sum of $12,634.15 paid the defendant as collector in two different amounts on the 19th day of October and the 3d day of November, 1927, under protest, to satisfy deficiency assessments, interest, and penalties assessed against the plaintiff as income taxes for the years 1918 and 1919. The additional assessments arose out of the fact that the Treasury Department disallowed a deduction of $10,110 taken by the plaintiff in its tax return; that being the amount of a promissory note for $7,500 and accrued interest given by James G. Taylor in his lifetime (Taylor died in 1918) for money loaned him by the plaintiff, which note the plaintiff held at his death and relinquished to his estate in payment of past services which Taylor had rendered the plaintiff at an alleged inadequate salary.

A trial was begun before the District Judge, a jury having been waived, and, at the close of the opening statement of plaintiff's counsel, the court, of its own motion, ruled that "the action was denied and the exception of the plaintiff noted." This order was in effect, if not in terms, an involuntary non-

suit and judgment of dismissal. If the plaintiff had not waived its constitutional right to a jury trial, the court would have been without power to enter such an order [Langwa v. Gorton-Pew Vessels Co. (C. C. A.) 59 F.(2d) 315], but, having waived its constitutional right to a jury trial, we see no reason why the court did not have the power to make the order.

It being brought to the court's attention, immediately after the nonsuit was ordered, that the parties had entered into an agreed statement of facts with the right of either party to introduce further evidence, the plaintiff was allowed to present the agreed statement of facts and such further evidence as it desired for the record on appeal. The defendant introduced no evidence.

Having introduced the agreed statement and further evidence, the plaintiff's counsel made thirteen requests for findings of fact and rulings of law, which were denied subject to exception. He also moved for judgment. This motion, in the situation then existing, amounted to nothing more than a request that the court vacate the order of nonsuit, and presents no question in addition to the one raised by the exception to the order of nonsuit.

Thereafter, on June 1, 1932, the defendant filed a motion that judgment be entered in his behalf in accordance with the order previously made by the court, and, on June 1, 1932, judgment was entered that the plaintiff take nothing by its writ and that the defendant recover of the plaintiff his costs, all subject to exception. It is this judgment from which the appeal is taken.

In view of the situation here presented, the involuntary nonsuit ordered at the close of the plaintiff's opening statement will be treated the same as though made at the close of the plaintiff's evidence, and presents the question whether that evidence was sufficient to warrant a finding that the surrender and cancellation of the note and interest by the plaintiff was a deductible expense paid or incurred during the taxable year 1918 in carrying on its business within the meaning of section 234 (a) (1) of the Revenue Act of 1918 (40 Stat. 1057, 1077), which provides:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries

or other compensation for personal services actually rendered," etc.

■ Was there then any evidence from which it could be found that the cancellation and delivery of the note for $7,500 and interest to the Taylor estate was a reasonable allowance for salary or other compensation for personal services actually rendered the plaintiff corporation by Mr. Taylor and a proper deduction within the meaning of section 234 (a) (1) of the Revenue Act of 1918? If so, then the judgment appealed from must be reversed and the case remanded to the District Court for determination of the facts essential to a proper disposition of the case.

The agreed statement of facts and the other evidence tended to show the following: That the Taylor-Logan Company was a Massachusetts corporation having its principal place of business at Holyoke, Mass., and that, throughout the calendar years 1918 and 1919, was engaged in the manufacture of paper. That James G. Taylor, at the time of his death in 1918, was, and for some fourteen years prior thereto had been, the president, general manager, and head salesman of the Taylor-Logan Company, and, since some time in 1909, a majority stockholder in that company. That Taylor, in his lifetime, borrowed from the plaintiff $7,500, and gave his note therefor bearing interest. That interest accrued thereon "until the amount of the said note, together with interest which the said James G. Taylor paid during his lifetime amounted to $10,110." That on July 31, 1918, at a meeting of the plaintiff's board of directors, the following vote was passed:

"Voted: that a committee of Mr. Adie, Mr. F. E. Taylor, Mr. Logan be appointed to take up the matter of note of seventy-five hundred dollars ($7500.00) of Mr. James G. Taylor and that this committee have full power to attend the same."

That, on November 24, 1918, after the death of James G. Taylor, the plaintiff's board of directors passed the following resolution:

"Voted: That whereas the corporation holds a note against James G. Taylor in the amount of seventy-five hundred dollars ($7500.00) on which he has paid interest to the corporation during his lifetime and whereas James G. Taylor for many years rendered valuable services to the corporation at an inadequate salary,

"Therefore it is

"Voted: that in recommendation of said services the note be cancelled, and delivered to the administrator of the estate of James

G. Taylor and the amount paid on the same as interest by James G. Taylor during his lifetime be applied in part payment towards the loan made by the corporation to James G. Taylor in the amount of twenty-six hundred ten dollars ($2610.00) and that the amount of the note and the interest payment be charged to the items of Profit and Loss."

It further appeared that, during his term of service, Mr. Taylor had received a salary ranging from $3,000 in 1904 to $5,000 in 1909; that from 1910 to 1915, inclusive, his salary was $7,500, and in 1916, 1917, and 1918 it was $12,000; that in 1905 the corporation had no net earnings, but a loss of $10,883.09; that in 1906 the net earnings amounted to $7,151.28; in 1907 to $3,493; in 1908 to $1,135.92; in 1909 to $18,288.59; in 1910 to $17,196.31; in 1911 to $13,540.95; in 1912 to $20,434.16; in 1913 there was a loss of $2,654.57; in 1914 there were net earnings of $18,058.56; in 1915 of $10,536.02; in 1916 of $55,676.21; in 1917 of $18,604; and in 1918 of $41,889.30; and that the books and records of the corporation were kept on the accrual basis during the years 1918 and 1919. In addition to Mr. Taylor, during these years, being the president and general manager of the corporation, it appeared that he handled its advertising, took care of the manufacturing, developed its merchandise lines, and was its principal salesman; that his services for years prior to his death were worth at least from $15,000 to $18,000 a year to the corporation; that he had been offered a salary of $25,000 to go with the American Writing Paper Company; that, in order to raise funds for financing the company, he had personally indorsed the notes of the corporation; that, although since 1909 he owned a majority of the stock, during this time there was a strong and alert minority interest; and that Mr. James A. Logan, one of its directors, had a substantially large minority interest during this period.

From this evidence it could be found that the services rendered by Mr. Taylor to the plaintiff corporation during the years that he was its president, general manager, and principal salesman were of great value to the plaintiff; that their value was considerably in excess of the salary paid him at any time by the corporation; that the corporation so regarded them, this being particularly shown by the vote of its board of directors wherein they recite that Mr. Taylor "for many years had rendered valuable services to the corporation at an *inadequate salary*"; that the additional compensation for his services, represented by the cancellation of the note, was reasonable when considered in connection with what he actually received and what his services were shown to be reasonably worth; and that the additional compensation paid was not a gift, but for valuable services rendered, for which he, in his lifetime, had been paid "an inadequate salary."

It is conceded in the defendant's brief that, if additional compensation for services in prior years had been paid to Mr. Taylor while he was alive and president, the amount paid would be, under the decision of the Supreme Court in Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733, deductible as an ordinary and necessary expense, if the directors so voted. But the defendant contends that the present case differs from that, in that here the president had died during the taxable year in which the payment was made, while, there, the officers to whom payments were made were alive and connected with the company; that the vote of the directors was consistent with a gift to Mr. Taylor's estate; that the corporation owed no legal obligation to the estate; that there was no consideration leading from the estate to the plaintiff; and that consequently the surrender of the note did not represent payment of an ordinary and necessary expense of the business and, in fact, it was nothing but a gift.

That there was evidence from which it could be found that the surrender of the note was not a gift, but was extra compensation for the past services of Mr. Taylor, for which he had been paid "an inadequate salary," cannot be doubted, for the vote of the board of directors so declares. And no more can it be said that there was no evidence that there was a consideration for the surrender of the note, for the vote makes it plain that the surrender of the note was in consideration of *valuable services* to the corporation which Mr. Taylor had rendered "at an inadequate salary." The corporation itself does not deny this, but insists that it is true in bringing this action. There is no suggestion of any attempted evasion or abuse on the part of the plaintiff in surrendering the note. Whether the corporation would surrender the note in an effort to make good the inadequate salary it had theretofore paid Mr. Taylor was for the corporation itself to determine, and we cannot see wherein the plaintiff should be denied the deduction simply because Mr. Taylor had died just before the passage of the vote was completed. The case is governed by the decision in Lucas v. Ox Fibre Brush Co., supra.

The judgment of the District Court is reversed, and the case is remanded to that court, where the facts should be found essential to a decision of the case for or against the plaintiff.