## AMERICAN FACTORS, LIMITED, v. KANNE.

## ALEXANDER & BALDWIN, LIMITED, v. SAME.

### Civ. Nos. 419, 474.

District Court for the Territory of Hawaii. March 18, 1948.

Smith, Wild, Beebe & Cades, of Honolulu, Hawaii, for American Factors, Limited.

Vitousek, Pratt & Winn, of Honolulu, Hawaii, for Alexander & Baldwin, Limited.

Ray J. O'Brien, U. S. Atty., of Honolulu, Hawaii, and Leland T. Atherton Sp. Asst. to Atty. Gen., for defendant.

METZGER, District Judge.

These two cases for the recovery of income taxes paid to the United States Internal Revenue Collector, were both tried in the same hearing.

The claim of American Factors, Limited was for recovery of taxes paid on sums deducted as exemptions from its 1932 gross income tax return, which exemptions were denied by the Collector, as follows:

(1) In 1924 the corporation, together with 23 of its stockholders, was sued by J. C. Isenberg et al., for $10,000,000 damages, alleging fraud in connection with the trans-

fer of the property of Hackfeld & Company, Limited by the Alien Property Custodian to the taxpayer, a newly formed corporation.

Twenty-two of the stockholders who were jointly sued with the taxpayer entered into an agreement among themselves to pay pro rata, on the basis of the stock for which they severally originally subscribed, the litigation costs of this suit. The taxpayer advanced from time to time such costs and expenses as they accrued and rendered accounts to this group of defendant stockholders. This litigation ran for several years and its total cost was $568,607.76. Of this sum, the twenty-two contributing stockholding defendants paid in to the company the sum of $396,812.50. There were 615 other original stockholders who were not made defendants who paid nothing into the litigation fund.

■ When the litigation came to an end in 1932 the taxpayer, being authorized at a meeting of its stockholders, refunded to the twenty-two stockholding defendants the sums they had contributed and deducted the same from its gross income tax return as an item of litigation expense, claiming it was legally liable to these contributors notwithstanding that they had made no claim or demand. This exemption claim is disallowed.

■ (2) In 1931 this taxpayer advanced the sum of $50,000 to H. Waterhouse Trust Company, Ltd. in the hope of aiding, with the help of others, the trust company from closing its doors due to its insolvent condition, which insolvency was known to the taxpayer. The following year the loan was written off the taxpayer's books as a total loss and deducted as a bad debt in its gross income tax return for that year. It claimed that the loan, while somewhat speculative, was made in good faith and supported by a promissory note. The note contained a proviso, as follows: "Payment of principal and interest to be made only when, if and to the extent that there shall be funds available therefor as set forth in letter of this date from the payor to the payee".

This deduction claim is disallowed.

■ (3) In its tax return for 1932 the taxpayer deducted as an ordinary and business expense the sum of $4,063.33 paid by it as pensions to widows and children of deceased employees. The collector denied this deduction; the Court finds it justifiable and allowed it.

Alexander & Baldwin, Limited's Case.

The claim of Alexander & Baldwin, Limited was for "bad debt" deduction which had been disallowed, and for a contribution which was also disallowed by the Collector.

In 1931 this taxpayer loaned $50,000 to Henry Waterhouse Trust Company, Limited for the purposes of reorganization, for which it received a note in the same terms as that received by American Factors. The following year this taxpayer determined the debt to be worthless and wrote it off in its books as a loss, which loss it claimed in its following tax return. This claim was on the same basis as the American Factor's claim and was disallowed by the Court.

■ In 1932 this taxpayer contributed $1,000 to the Hawaiian Bureau of Government Research, an organization maintained by contributions, which was created to gather statistical information and report on public affairs, legislation, social and economic which affected or might affect taxpayers, which contribution was disallowed by the collector.

At the close of arguments November 15, 1947 in the trial of the two cases the Court announced from the bench the following decisions:

"American Factors, Limited.

"1. Hackfeld Litigation:

"My opinion is that the persons who subscribed to pay voluntarily for the defense of this inordinately costly litigation were impulsed and motivated entirely by keen personal interests and desires to defeat the demands of the plaintiffs in the case and clear themselves as defendants against claims that they had unlawfully conspired and acted in fraud and greed, as well as to escape a liability in damages by a possible judgment against them, and to protect their individual investments as shareholders in the corporation, and that they were willing, and made a definite offer to pay, and did pay, to the extent of assessments made

against them, without promise or original expectation of reimbursement at the time and times they made their contributions to the litigation fund.

"There is no evidence that the taxpayer promised or implied an intention to reimburse them at the time they subscribed the agreement or made their contributions, and no evidence that the taxpayer even considered the matter until the backbone of the litigation was broken in victory to all the defendants.

"There was no demand by them or test of their right to have contribution at the expense of other shareholders who were not named as parties defendant. The approval at a stockholders' meeting and the act of the management in reimbursing these contributors from the company's funds apparently flowed largely from feelings of gratitude arising from the successful outcome of the case in litigation and the liberal aid of the contributors and their steering committee which contributed many facilities and influences such as could not have been supplied by the management of American Factors acting alone.

"Certainly, the taxpayer had very substantial interests to protect, and was justified in every way, as a legitimate business outlay, in paying from its own funds during the taxable year of 1932, or earlier years had it chosen to do so, the costs of litigation which imperiled its existence although others were involved in the same litigation as defendants and had much to lose, had the others not come forward with funds and volunteered to engineer and fight the battle at their own costs and had the taxpayer not accepted this offered payment plan and the volunteered services; either of the parties could have abandoned or modified this plan at any time, but so long as it was adhered to it was binding on both; but the taxpayer was not justified, in the realm of taxation laws and deductibles, to later deduct from taxable income the money it paid to reimburse voluntary contributors for money which they had paid out to clear themselves and this company of fraudulent charges made against them collectively and individually and to protect their property interests, no matter if victory in such defense brought great benefit to the taxpayer as well as to the other named defendants.

"As between share owners, of course, within ultra vires limitations, they were empowered to make any desired distribution of the company's funds so long as none was injured.

"The taxpayer is entitled to an expense-deduction in its 1932 tax return of the sum of all Hackfeld litigation paid by it prior to the end of 1932, less the amount paid in to it for that purpose by the other defendants. The claim for tax refund on sums reimbursed to voluntary contributors to this litigation fund is denied.

2. "As to the Waterhouse Trust Company contribution of $50,000, this was just that—a contribution. The note given in acknowledgement of the contribution was contingent as to value upon such conditions as to give it no negotiable value from the time it was made. It could not be dealt with as a debt. The considerations in payment for the contribution flowed to the payee of the note at the time it was made—the protection of the commercial community, sympathy toward Waterhouse Company clients who could ill afford to lose, and other commendable desires and motives of helpfulness and security, but there was no attempt to show that either American Factors or Alexander & Baldwin would have suffered any material loss had they not attempted to keep the Waterhouse Trust Company a going concern.

"I find that no part of this contribution was deductible as a bad debt or loss in 1932 or at any other time, since it never was a collectible debt, but was from the beginning in the nature of a contingent or speculative gift, to which status it speedily resolved itself with certainty, although it may have accomplished in part the purpose for which it was intended, that is, prolonged the life of Waterhouse Trust Company. Claim for tax refund on this outgoing sum of $50,000 is denied.

3. "As to the items of contributions or pensions to dependents of deceased employees, I am fully convinced from the evidence that this was a usual and, within ordinary business discretion, a necessary

and proper business practice. It is well recognized that it would reasonably tend to the gratification, good will and. loyalty of employees in general and thus be a benefit to business operations, particularly in a business under many department heads and of ramified operations.

"I find these moderate and ·reasonable items to be proper income tax deductions. "Alexander & Baldwin, Limited.

1. "My opinion and finding with respect to the Waterhouse Trust contribution in the American Factors case is, in all pertinent respects, applicable to the refund claim of this litigant and the said claim is denied.

2. "As to the contribution to maintain the Hawaiian Bureau of Government Research, I find this to be an ordinary and necessary expense to a firm carrying on the business and business trusts and responsibilities such as Alexander & Baldwin carry.

"If more extensive findings and conclusions are desired, the prevailing parties may prepare and submit such proposals to me, after tendering copies to opposing counsel."