THE BARBOURVILLE BRICK COMPANY, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79558. Filed October 9, 1961.

*D. Paul Alagia, Jr., Esq.*, for the petitioner.
*Bart A. Brown, Jr., Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* This proceeding involves a deficiency in Federal income tax for 1954 in the amount of $1,530. The issue is whether certain payments to the widow of the deceased president of petitioner are deductible under the provisions of section 162(a) or section 404(a), I.R.C. 1954.

All the facts have been stipulated. They are so found and are incorporated herein by this reference.

The Barbourville Brick Company was incorporated under the laws of the Commonwealth of Kentucky in 1936 for the purpose of producing structural clay products and selling all of the clay it mined in the form of burnt brick. Its principal office and place of business was in Barbourville, Kentucky. Its Federal income tax return for the year 1954 was filed with the district director of internal revenue, Louisville, Kentucky.

Petitioner regularly kept its books and records and reported its income for Federal income tax purposes on an accrual method of accounting and filed its Federal income tax return on a calendar year basis.

From January 1941 until his death on July 2, 1954, J. R. Bacon continuously held the office of president of petitioner and, throughout these years, assumed the primary and full responsibility for the management and operation of petitioner's business. On July 2, 1954, the only members of J. R. Bacon's immediate family were his wife, Avanelle E. Bacon, his two sons, Richard R. and Barry W. Bacon, and his father, D. G. Bacon. None of these was qualified or in a position to assume the management and responsibility of the operation of petitioner.

Immediately after the death of J. R. Bacon on July 2, 1954, the capital stock of petitioner consisted of 180 shares of common stock which was held as follows:

| Shareholder | Number of shares |
|---|---|
| Estate of J. R. Bacon, Avanelle E. Bacon, administratrix | 63 |
| Avanelle E. Bacon | 32 |
| Richard R. Bacon (son of J. R. and Avanelle E. Bacon), guardian, Avanelle E. Bacon | 38 |
| Barry W. Bacon (son of J. R. and Avanelle E. Bacon), guardian, Avanelle E. Bacon | 35 |
| D. G. Bacon (father of J. R. Bacon) | 12 |
| Total | 180 |

On August 20, 1954, a meeting of petitioner's board of directors was held. According to the minutes of this meeting Avanelle E. Bacon, D. G. Bacon, and R. T. Baker were present. The minutes state as follows:

A discussion was had with respect to the services which had been rendered to the corporation by Mr. J. R. Bacon as its President during the past years and until his death July 2, 1954, and attention was called to the fact that there had never been any employment contract between Mr. Bacon and the corporation or any provision for any death benefits to be paid to his widow in case of his death. Mrs. Avanelle E. Bacon discussed the standards of living, health and general welfare of his family which had been established by Mr. Bacon, and her need for obtaining funds, preferably a fixed income, with which to maintain the household and carry on the established standards of living for her family. After a discussion of these matters and upon motion made, seconded and carried, the following resolution was adopted:

RESOLVED: That in recognition of the financial needs of Avanelle E. Bacon (widow of J. R. Bacon, deceased), and in order to give financial security for her to maintain her standard of living and general welfare, voluntary payments are hereby authorized to be made by this corporation to the widow of J. R. Bacon in an amount equal to her late husband's monthly salary of $850.00 per month, beginning with the month of July, 1954, and to be continued for a period of six months from date of death of her late husband, unless changed by order of this Board of Directors.

Pursuant to the resolutions passed by petitioner's board of directors on August 20, 1954, petitioner, on each of the dates October 13, 1954, and January 17, 1955, made a payment of $2,550, or a total of $5,100, to Avanelle.

The amount of $5,100 was recorded on petitioner's books and records as an expense for its taxable year 1954 and was claimed as a deduction on petitioner's income tax return for that year. The explanation on the journal entry reads in part as follows: "To record continuation of Mr. Bacon's salary to Mrs. Bacon * * *."

Petitioner did not have an employment contract with J. R. Bacon, nor did the petitioner prior to August 20, 1954, have any provision for payment of benefits to his widow in case of his death.

The minutes of the meeting of petitioner's board of directors held on August 20, 1954, record that Avanelle E. Bacon reported to the board that she had been approached by certain parties who were interested in purchasing the petitioner's inventory, machinery, and equipment, and its lease with Union College and, thereafter, the board authorized her to negotiate with any parties interested in purchasing such assets and to make a sale of these assets. Between August 20, 1954, and December 31, 1954, the petitioner sold its machinery and equipment and its lease with Union College for $15,000. The balance sheet made a part of the petitioner's 1954 income tax return shows that petitioner had completely liquidated its inventories by December 31, 1954.

On February 20, 1955, a meeting of the petitioner's board of directors was held. Avanelle E. Bacon, D. G. Bacon, and R. T. Baker were present at this meeting. The minutes state as follows:

The Chairman stated that since the death of the company's President, Mr. J. R. Bacon, on July 2, 1954, the company's machinery and equipment and lease with Union College have been sold; that the company has ceased to manufacture and sell brick and that consideration should be given by the directors to the voluntary dissolution of the company. After a discussion of the matter and upon motion duly made, seconded, and unanimously carried, it was resolved that the company proceed to liquidate its remaining assets, pay and discharge its liabilities, wind up its affairs and distribute its remaining funds and assets pro rata per share to the holders of the shares of the outstanding capital stock of the company upon the surrender of said outstanding shares to the Secretary of the company; that the question of the proposed dissolution of the company be submitted to a vote at a meeting of the shareholders to be called on the 2nd day of March, 1955, upon notice of the specific purpose of the meeting called in the manner provided in Section 271.295 of the Kentucky Revised Statutes; and that upon the approval of the dissolution of the company by the vote of the shareholders at such meeting, the Secretary-Treasurer of the corporation shall be, and hereby is, authorized to take necessary legal steps to dissolve the corporation and distribute its assets according to the laws of the Commonwealth of Kentucky.

On March 2, 1955, a meeting of the petitioner's stockholders was held. Avanelle E. Bacon and D. G. Bacon, representing all of the stock of the corporation, were present at this meeting. The minutes of this meeting state as follows:

Because of the death of the company's President, Mr. J. R. Bacon, on July 2, 1954, the Secretary-Treasurer of the company, with the approval of the Board of Directors, sold the machinery and equipment and lease with Union College and proceeded to collect all outstanding accounts and generally wind up the company's affairs. After a discussion of the resolution of the Board of Directors to dissolve the corporation, the following resolution was adopted by the unanimous vote of all of the stockholders:

RESOLVED: That the company proceed to liquidate its assets, pay and discharge its liabilities, wind up its affairs and distribute its remaining funds and assets

pro rata per share to the holders of the shares of outstanding capital stock of the company upon the surrender of the said outstanding shares to the Secretary of the company; and that the Secretary-Treasurer of the corporation shall be, and she hereby is, authorized to take the necessary legal steps to dissolve the corporation and distribute its assets according to the laws of the Commonwealth of Kentucky.

Petitioner's accumulated earned surplus on December 31, 1953, was $69,782.07. For the year 1954, after deducting the payment to Avanelle Bacon, petitioner's taxable net income was $24,549.88. Petitioner made distributions in liquidation to its stockholders of $99,247.81 and $6,125.16 during the years ended December 31, 1956, and October 15, 1957, respectively. Petitioner was completely liquidated by October 1957.

The amount of $5,100 was recorded on petitioner's books and records as an expense for its taxable year 1954 and was claimed as a deduction on its income tax return for such taxable year.

Respondent disallowed the deduction claimed for the stated reason that "the amount of $5,100.00 claimed as a deduction for a 'gratuity to Mrs. J. R. Bacon' on Form 1120 for the taxable year ended December 31, 1954, does not constitute an allowable deduction within the purview of Section 162 of the 1954 Internal Revenue Code."

In its original petition, petitioner alleged that the entire $5,100 is deductible under section 162(a). By amended petition, it alleged the $5,100 is an allowable deduction for 1954 under the provisions of section 162(a) and section 404 of the Internal Revenue Code of 1954. On brief, however, petitioner has apparently abandoned its claim that the entire $5,100 is an allowable deduction for 1954 under section 162(a) and argues only that the $2,550 actually paid to the widow of its deceased president in 1954 is an allowable deduction for the taxable year 1954 under the provisions of section 404(a)(5), and section 1.404(a)–12, Income Tax Regs.

On brief, petitioner states the "ISSUE TO BE DECIDED" as—

Where the petitioner obligated itself to pay to the widow of its deceased President an amount equivalent to the monthly salary of the deceased President for a period of six months, are such payments deductible under the provisions of Section 404 of the Internal Revenue Code of 1954 and applicable regulations, such payment being treated as reasonable under the requirements of Section 162 of the 1954 Code.

Also, on brief, apparently referring to section 404(a)(5) and section 1.404(a)–12, petitioner states:

Under this Section, taxpayer concedes that petitioner's deduction for the taxable year ended December 31, 1954, is limited to $2,550.00.

Section 162, relating to "Trade or Business Expenses," insofar as pertinent, provides as follows:

(a) In General.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

    (1) A reasonable allowance for salaries or other compensation for personal services actually rendered;

Section 404, insofar as applicable, provides:

SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.

    (a) General Rule.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, *such contributions or compensation shall not be deductible under section 162* (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); *but*, if they satisfy the conditions of either of such sections, *they shall be deductible under this section*, subject however, to the following limitations as to the amounts deductible in any year:

    \*        \*        \*        \*        \*        \*        \*

    (5) Other plans.—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

[Emphasis added.]

Petitioner argues that "Insofar as Section 162 is concerned, the deduction, allowable under Section 404(a)(5) is subject only to the 'reasonableness' requirements of Section 162," that the continuation of the salary payments to the widow of its deceased president for a period of 6 months is reasonable both in amount and period and, accordingly, such payments are deductible under section 404(a)(5), and section 1.404(a)–12 of the regulations.[1]

Respondent's primary contention is that the payments in question, for various reasons, do not meet the "standards of deductibility under section 162," as required by section 404(a). He concedes, on brief, that if the payments do meet the standards of deductibility under section 162, they also meet the requirement contained in section 404(a) that they be paid under a deferred compensation plan and, under section 1.404(a)–12, Income Tax Regs., petitioner would be entitled

---

[1] Sec. 1.404(a)–12, Income Tax Regs. *Contributions of an employer under a plan that does not meet the requirements of section 401(a); application of section 404(a)(5).*

Section 404(a)(5) covers all cases for which deductions are allowable under section 404(a) but not allowable under paragraph (1), (2), (3), (4), or (7) of such section. \* \* \* If unfunded pensions are paid directly to former employees, their rights to such payments are nonforfeitable, and accordingly, such amounts are deductible under section 404(a)(5) when paid. *Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a).* \* \* \* If an amount is accrued but not paid during the taxable year, no deduction is allowable for such amount for such year. \* \* \* [Emphasis added.]

to a deduction of $2,550 for the year 1954. Respondent argued, at the hearing and on brief, that the payments in question were in reality (1) a gift to the widow by petitioner, or (2) a distribution to her of corporate earnings, neither of which would be deductible under section 162.

It is apparently petitioner's position that the payments to the widow of its deceased president are deductible, as continuation-of-salary payments for a limited period, under section 404(a)(5) of the Internal Revenue Code of 1954 and section 1.404(a)–12, Income Tax Regs., promulgated thereunder. Petitioner argues that the reference which is made to section 162 in section 404(a) and section 1.404(a)–12 relates only to the "reasonableness" requirement of section 162, and further, that section 404(a)(5) and section 1.404(a)–12 are to be interpreted in the light of the prior regulations, revenue rulings, and court decisions under the 1939 Code. Petitioner cites Rev. Rul. 54–625, 1954–2 C.B. 85, as modified by Rev. Rul. 55–212, 1955–1 C.B. 299, and *I. Putnam, Inc.*, 15 T.C. 86 (1950), in support of its argument that the payments herein were reasonable, and *Fifth Avenue Coach Lines, Inc.*, 31 T.C. 1080, 1093 (1959), affirmed and reversed on other issues 281 F. 2d 556 (C.A. 2, 1960), certiorari denied 366 U.S. 964, in support of its contention that "to be deductible, the payments need not be in the nature of additional compensation."

Section 39.23(a)–9 of Regulations 118, promulgated under the 1939 Code, provided, in pertinent part, that—

When the amount of the salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted. * * *

This provision first appeared in Regulations 45 under the Revenue Act of 1918 and has been continued without change in subsequent regulations under the 1939 Code. Following the adoption of the 1954 Code, however, this provision was omitted from section 1.162 pertaining to business expense.

The question thus framed, so far as we are advised, has not been considered by this or any other court under the provisions of the Internal Revenue Code of 1954, and for reasons which will presently appear, we find it unnecessary to decide it here. The nature of payments made by an employer to the widow of an officer or employee has been considered by this Court in a number of cases under the provisions of the 1939 Code, upon which petitioner partially relies.

It requires no extended citation of authority for the proposition that a dividend is not a deductible expense of a corporate taxpayer. *Paramount-Richards Th.* v. *Commissioner*, 153 F. 2d 602 (C.A. 5, 1946), affirming a Memorandum Opinion of this Court; *United Mercantile*

*Agencies, Inc.*, 23 T.C. 1105, 1112 (1955), remanded on other issues sub nom. *Drybrough* v. *Commissioner*, 238 F. 2d 735 (C.A. 6, 1956). See *Fifth Avenue Coach Lines, Inc.*, *supra*. Whether or not a payment by a corporation to its stockholders is a distribution amounting to a dividend under section 115(a) is primarily a question of fact. *Lengsfield* v. *Commissioner*, 241 F. 2d 508 (C.A. 5, 1957), affirming a Memorandum Opinion of this Court. We find that here there can be no question but that this was a dividend. A distribution of earnings by a corporation to its stockholder need not formally be declared as such, need not be distributed pro rata, and need not be so characterized by the corporation. *Kate Hudson*, 34 B.T.A. 155 (1936), aff'd. 99 F. 2d 630 (C.A. 6, 1938), certiorari denied 306 U.S. 644; *Lengsfield* v. *Commissioner*, *supra*. "Courts have frequently, and apparently uniformly, held that where controlling stockholders divert corporate income to themselves, such diverted funds should be treated as constructive dividends." *Simon* v. *Commissioner*, 248 F. 2d 869 (C.A. 8, 1957), reversing on other grounds a Memorandum Opinion of this Court.

Here, Avanelle Bacon, in one capacity or another, held all but 12 of the 180 outstanding shares of petitioner. The sole remaining stockholder, her father-in-law, was present at the meeting at which the payment to her was authorized as a "gratuity." In *Lincoln Nat. Bank* v. *Burnet*, 63 F. 2d 131, 133 (C.A.D.C. 1933), the Court of Appeals said:

It is true that the directors considered it in part as a gift and not as a dividend, but this is not determinative of the nature of the distribution, nor is the fact that the distribution was to some of the shareholders only and not to others, nor that it was divided among the stockholders in proportions other than their respective holdings of stock in the corporation. The other shareholders have not complained of this inequality, and must therefore in this proceeding be deemed to have ratified the distribution. The character of the distribution as a division of profits was not changed by the manner in which it was accomplished, nor by the personal motives which induced the respective stockholders or directors to approve of such action, for it nevertheless remained in contemplation of law a distribution of dividends. It was made from the earnings or profits of the distributing corporation, and was divided among the stockholders of the distributing company in such proportion as was satisfactory to its directors and stockholders.

The purpose of the payment was stated to be to give Avanelle Bacon "financial security" and to "maintain her standard of living." This made it entirely suitable for her as holder of the shares in her husband's estate and those belonging to their two children to vote to authorize the payment. But it did not prevent it from being a dividend, nondeductible by the corporate petitioner.

The foregoing facts make this situation virtually indistinguishable from that in *Lengsfield* v. *Commissioner*, *supra* at 510, where—

the Tax Court * * * after a full consideration of the facts, found that, as between the corporation and the recipients, the payments, were distributions of profits taxable to the recipients as dividends.[2]

## The Court of Appeals continued (p. 510):

We think the record supports, indeed requires, this conclusion. There were substantial earnings and profits available during the taxable years as a source for making the payments and, when made, they were charged on the corporation's books to the surplus account. The taxpayers were all shareholders of the corporation at the time they received the payments in question. The payments to taxpayers * * * were consented to by all the shareholders * * * and no question has ever been raised by any shareholder of the corporation as to the authority of the board to make the payments. Moreover, the taxpayers-recipients were, as the Tax Court found, majority (63 percent) shareholders, most of the others were close relatives * * *. We think that, under these circumstances, the payments in question directly respond to the definition of a taxable dividend contained in the Treasury Regulations 111. The fact that the resolutions authorizing the payments characterized them as a "gratuity" for past services is not determinative of the nature of the distribution.

Although section 316 of the 1954 Code rather than section 115 of the 1939 Code is applicable here, the relevant language is identical.

The dividend issue was raised expressly by respondent for the first time at the trial by the statement that "the amounts involved in this case are * * * a preferential ordinary or liquidating dividend." Petitioner's objection was overruled by the trial judge. This position was clearly correct.

In the first place, respondent's determination was in such general terms [3] that the burden of proving error in any respect undoubtedly rested on petitioner. Cf., e.g., *Arthur Sorin*, 29 T.C. 959 (1958), affirmed per curiam 271 F. 2d 741 (C.A. 2, 1959), with *Thomas Wilson*, 25 T.C. 1058 (1956), appeal dismissed (C.A. 4, Mar. 1, 1957).

A dividend would as clearly justify the disallowance as a gift. Possibly a plea of surprise, if warranted, and a request for a continuance might have been proper. See *Helvering* v. *Wood*, 309 U.S. 344 (1940). But no such action was taken, and it is most unlikely that respondent's position was in fact unknown to petitioner.

Giving petitioner the benefit of all doubts, however, and assuming, contrary to the fact, that respondent's position at the trial was a

---

[2] The *Lengsfield* opinion also includes the following (pp. 509–510):

"Pointing, too, to the statutory language, Internal Revenue Code, Sec. 115, 26 U.S.C.A. § 115, 'Distributions by corporations':

'The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after Feb. 28, 1913, or (2) out of the earnings or profits of the taxable year * * *'

and to the fact that there were earnings and profits available which were consequently the source of distributions, the Tax Court declared, 'We cannot escape the conclusion that by legislative definition they were "dividends".' "

[3] "[T]he amount of $5,100.00 claimed as a deduction for a 'gratuity to Mrs. J. R. Bacon' on Form 1120 for the taxable year ended December 31, 1954, does not constitute an allowable deduction within the purview of Section 162 of the 1954 Internal Revenue Code."

departure from the theory of the deficiency notice, any new matter raised would merely require respondent to sustain the burden of proof. Rule 32, Tax Court Rules of Practice. And it is not accurate, as petitioner seems to infer, that respondent limited his contention to liquidating dividends. This payment need be viewed only as an ordinary dividend, distributed out of either accumulated or current earnings, sec. 316(a), I.R.C. 1954, each of which, as the record affirmatively demonstrates, and as we have found, was more than adequate for the purpose.

Given the undisputed facts, we regard any burden on respondent as having been amply discharged.

The conclusion that the payment in issue was a dividend makes it unnecessary to dispose of other questions raised by the parties.

Reviewed by the Court.

*Decision will be entered for the respondent.*

———

BRUCE, *J.*, concurring: I agree with the majority that the payment in question is not deductible by petitioner. I am not at all satisfied, however, that the payment in question constituted a dividend and, accordingly, do not wish to be understood as agreeing with the reasons adopted by the majority. I would deny the deduction for the reasons hereinafter discussed.

On its income tax return for the taxable year 1954, petitioner claimed a deduction in the amount of $5,100 for a "gratuity to Mrs. J. R. Bacon."

Respondent disallowed the deduction claimed for the stated reason that "the amount of $5,100.00 claimed as a deduction for a 'gratuity to Mrs. J. R. Bacon' on Form 1120 for the taxable year ended December 31, 1954, does not constitute an allowable deduction within the purview of Section 162 of the 1954 Internal Revenue Code."

In its original petition filed herein, petitioner alleged that the entire $5,100 is deductible under section 162(a). By amended petition, it alleged the $5,100 is an allowable deduction for 1954 under the provisions of section 162(a) and section 404 of the Internal Revenue Code of 1954. On brief, however, petitioner has apparently abandoned its claim that the entire $5,100 is an allowable deduction for 1954 under section 162(a) and argues only that the $2,550 actually paid to the widow of its deceased president in 1954 is an allowable deduction for the taxable year 1954 under the provisions of section 404(a)(5) and section 1.404(a)–12, Income Tax Regs.

On brief, petitioner states the "ISSUE TO BE DECIDED" as

Where the petitioner obligated itself to pay to the widow of its deceased President an amount equivalent to the monthly salary of the deceased President

for a period of six months, are such payments deductible under the provisions of Section 404 of the Internal Revenue Code of 1954 and applicable regulations, such payment being treated as reasonable under the requirements of Section 162 of the 1954 Code.

Also, on brief, apparently referring to section 404(a)(5) and section 1.404(a)-12, Income Tax Regs., petitioner states:

Under this Section, taxpayer concedes that petitioner's deduction for the taxable year ended December 31, 1954, is limited to $2,550.00.

Section 162, relating to "Trade or Business Expenses," insofar as pertinent herein, provides as follows:

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) A reasonable allowance for salaries or other compensation for personal services actually rendered;

Section 404, insofar as applicable, provides:

SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.

(a) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) ; but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

\*     \*     \*     \*     \*     \*     \*

(5) OTHER PLANS.—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

Sections 162(a)(1) and 404(a) of the 1954 Code are derived, respectively, from sections 23(a) and (p) of the 1939 Code. Paragraphs (1), (2), and (3) of section 404(a) relate to Pension Trusts, Employees' Annuities, and Stock Bonus and Profit-Sharing Trusts, and are conceded not to be applicable herein. Section 212, relating to expenses for the production of income, is likewise not applicable. Accordingly, in its final analysis, the question to be determined herein is whether the payments in question "satisfy the conditions" of section 162, as required by section 404(a).

Petitioner argues that "insofar as Section 162 is concerned, the deduction allowable under Section 404(a)(5) is subject only to the 'reasonableness' requirements of Section 162," that the continuation of the salary payments to the widow of its deceased president for a period of 6 months is reasonable both in amount and period and,

accordingly, such payments are deductible under section 404(a)(5) and section 1.404(a)–12 of the regulations.[1]

Respondent's primary contention is that the payments in question do not meet the "standards of deductibility under section 162," as required by section 404(a). He concedes, on brief, that if the payments do meet the standards of deductibility under section 162, they also meet the requirement contained in section 404(a) that they be paid under a deferred compensation plan and, under section 1.404(a)– 12, Income Tax Regs., petitioner would be entitled to a deduction of $2,550 for the year 1954. Respondent further argues, on brief, that the payments in question were in reality (1) a gift to the widow by petitioner, or (2) a distribution to her of corporate earnings, neither of which would be deductible under section 162.

By express provision of the statute, deductibility of payments under a deferred payment plan is limited to section 404(a). Since, as the parties have conceded, the payments herein were not paid under a stock bonus, pension, profit-sharing, or annuity plan, as included in paragraph (1), (2) or (3), they are deductible, if at all, only under paragraph (5) of section 404(a), sometimes referred to as a "catch-all provision." See *Rose Packing Co.*, 28 T.C. 1028. To be deductible under paragraph (5) of section 404(a), however, it is necessary that such payments "satisfy the conditions" of section 162, as specifically required by section 404(a). Sec. 1.404(a)–1(b), Income Tax Regs.; T.D. 6203, 1956–2 C.B. 256. I do not think the payments in question satisfy such conditions.

We do not have here any of the factors which have generally been held sufficient to constitute payments to the widows of deceased officers

---

[1] Sec. 1.404(a)–12. CONTRIBUTIONS OF AN EMPLOYER UNDER A PLAN THAT DOES NOT MEET THE REQUIREMENTS OF SECTION 401(a); APPLICATION OF SECTION 404(a)(5). Section 404(a)(5) covers all cases for which deductions are allowable under section 404(a) but not allowable under paragraph (1), (2), (3), (4), or (7) of such section. No deduction is allowable under section 404(a)(5) for any contribution paid or accrued by an employer under a stock bonus, pension, profit-sharing, or annuity plan, or for any compensation paid or accrued on account of any employee under a plan deferring the receipt of such compensation, except in the year when paid, and then only to the extent allowable under section 404(a). See § 1.404(a)–1. If payments are made under such a plan and the amounts are not deductible under the other paragraphs of section 404(a), they are deductible under paragraph (5) of such subsection to the extent that the rights of individual employees to, or derived from, such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. If unfunded pensions are paid directly to former employees, their rights to such payments are nonforfeitable, and accordingly, such amounts are deductible under section 404(a)(5) when paid. Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). As to what constitutes nonforfeitable rights of an employee in other cases, see § 1.402(b)–1. If an amount is accrued but not paid during the taxable year, no deduction is allowable for such amount for such year. If an amount is paid during the taxable year to a trust or under a plan and the employee's rights to such amounts are forfeitable at the time the amount is paid, no deduction is allowable for such amount for any taxable year.

or employees ordinary and necessary business expenses. The payments were not made pursuant to any contract of employment between petitioner and its president or any provision for benefits to be paid to his widow upon his death. Cf. *Seavey & Flarsheim Brokerage Co.*, 41 B.T.A. 198. They were not made pursuant to any established pension plan, or a program, policy, or custom having the effect of such a plan. There is no showing of any benefit directly or indirectly to petitioner such as the effect such payments might have upon the morale of, or as an incentive to, other officers or employees. Cf. *American Factors* v. *Kanne*, 76 F. Supp. 133, reversed on other grounds 190 F. 2d 155; *Fifth Avenue Coach Lines, Inc.*, 31 T.C. 1080, 1096, affirmed in part and reversed in part on other issues 281 F. 2d 556, certiorari denied 366 U.S. 964. In fact, petitioner not only had no other officers or employees occupying a managerial position, but apparently there were no employees, stockholders, or members of Bacon's family, qualified to take over the management of petitioner's business. There is neither claim nor evidence that the widow performed any services for petitioner. Finally, there is neither claim nor showing that the payments in question were in the nature of extra compensation for past services rendered by petitioner's deceased president. Cf. *Lucas* v. *Ox Fibre Brush Co.*, 281 U.S. 115; *Flood* v. *United States*, 133 F. 2d 173; *Taylor-Logan Co.* v. *White*, 62 F. 2d 336. The corporate minutes indicate that petitioner's president had been receiving $850 per month, but there is no showing that the value of his services exceeded such compensation. Moreover, the minutes of the meeting of petitioner's board of directors held August 20, 1954, at which meeting the widow was present, indicate that the directors were concerned with her needs, not with the adequacy or inadequacy of the compensation which had theretofore been paid to her husband. The "voluntary payments" authorized by the resolution were stated to be "in recognition of [her] financial needs * * *, and in order to give financial security for her to maintain her standard of living and general welfare." Also, on its income tax return for 1954, the petitioner designated the deduction claimed as a "Gratuity to Mrs. J. R. Bacon."

I do not understand petitioner to claim that any of the elements of business expense referred to above are present here. It is apparently petitioner's position that notwithstanding the absence of such elements, the payments to the widow of its deceased president are deductible, as continuation of salary payments for a limited period, under section 404(a)(5) of the Internal Revenue Code of 1954 and regulations section 1.404(a)–12, promulgated thereunder. Petitioner argues that the reference which is made to section 162 in section 404(a) and Income Tax Regulations section 1.404(a)–12 relates only to the "reasonableness" requirement of section 162, and further, that section 404(a)(5) and Income Tax Regulations section 1.404(a)–12 are to be

interpreted in the light of the prior regulations, revenue rulings, and court decisions under the 1939 Code. Petitioner cites Rev. Rul. 54–624, 1954–2 C.B. 85, as modified by Rev. Rul. 55–212, 1955–1 C.B. 299, and *I. Putnam, Inc.*, 15 T.C. 86, in support of its argument that the payments herein were reasonable, and *Fifth Avenue Coach Lines, Inc., supra,* in support of its contention that "to be deductible, the payments need not be in the nature of additional compensation."

Section 39.23 (a)–9 of Regulations 118, promulgated under the 1939 Code, provided, in pertinent part, that—

When the amount of the salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted. * * *

This provision first appeared in Regulations 45 under the Revenue Act of 1918 and has been continued without change in subsequent regulations under the 1939 Code. Following the adoption of the 1954 Code, however, this provision was omitted from Income Tax Regulations section 1.162 pertaining to business expense. No reason has been advanced for this omission. It is at least reasonable to conclude, however, that it was intended to emphasize the provision contained in section 404(a) that, in the absence of an established pension plan, payments to widows of deceased officers or employees, to be deductible, must "satisfy the conditions" of section 162, including the requirement that, unless otherwise deductible as business expenses, they represent "a reasonable allowance for salaries or other compensation for personal services actually rendered" as provided in paragraph (1) of section 162(a). This conclusion finds support in the provision contained in Income Tax Regulations section 1.404(a)–12, relating to the application of section 404(a) (5), that—

Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), *and if such amounts meet the requirements of section 162* or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * * [Emphasis supplied.]

The question presented herein, so far as I am advised, has not been considered by this or any other court under the provisions of the Internal Revenue Code of 1954. The question of the deductibility of payments made by an employer to the widow of an officer or employee has, however, been considered by this Court in a number of cases under the provisions of section 23(a) of the 1939 Code, from which section 162(a) (1) is derived.

In the leading case of *McLaughlin Gormley King Co.*, 11 T.C. 569, 575, we said:

in the absence of a contract liability, an established pension policy, or a showing that such payments were for past compensation and were reasonable in amount, the payments may not be deducted under section 23(a).

20

In that case the taxpayer's president died on July 7, 1939, and the taxpayer, pursuant to a resolution approved by its stockholders on November 14, 1939, paid to his widow the remainder of his salary for the month of July 1939, and thereafter $300 each month through the fiscal year ended September 30, 1943. The Commissioner allowed as deductions the payments made to the widow after the death of her husband to November 30, 1941, and disallowed the remaining payments on the ground that the "limited period" for which the petitioner therein could claim deductions for the payments to the widow terminated not later than November 30, 1941, 29 months after they were initiated, by virtue of section 29.23(a)–9 of Regulations 111. *Not being in issue*, we did not disturb the deductions allowed by the Commissioner, but declined to allow the deduction for any additional period, holding that the payments made subsequent to November 30, 1941, were not deductible by the taxpayer as ordinary and necessary business expenses under section 23(a) or the provisions of section 29.23(a)–9 of Regulations 111. Referring to the deductions which had been allowed by the Commissioner, we pointed out that income tax deductions are a matter of legislative grace and that the right to take the deductions sought by the petitioner must be found in section 23(a) and are to be justified as ordinary and necessary expenses of carrying on a trade or business. We further stated (pp. 575–576):

The provision in the regulations providing that the salary of a deceased officer may be paid to his widow for a "limited period" first appeared in Regulations 45 under the Revenue Act of 1918, and this provision has continued more or less without change in subsequent regulations. This provision was, no doubt, a recognition on the part of the Commissioner of the very general custom of business to make such payments for a reasonable time when death occurred to a faithful officer or employee, but the *fundamental right to this deduction when demanded by a taxpayer must be established within the language of section 23(a)*. [Emphasis supplied.]

In *Frederick Pfeifer Corporation*, 14 T.C. 569, we held that the payments of $350 a month, or a total of $875, to the widow of petitioner's deceased president in 1944, were not ordinary and necessary expenses of the business of the taxpayer, within the meaning of section 23(a)(1)(A). In that case, Pfeifer, who had for many years been engaged in representing hardware manufacturers, transferred his business to the petitioner, organized in April 1944, in exchange for all its stock and an agreement that he would be continued as president of the corporation and that, after his death, his widow would be paid a pension of $350 a month for as long as she lived. He died in October 1944, leaving the stock of petitioner to his two sons, who had been active in the business with him, and the residue of his estate to his wife. Quoting the statement first hereinabove set forth from *Mc-*

*Laughlin Gormley King Co.*, *supra*, we found "there was no established pension policy and no showing that the payments were for past compensation and were reasonable in amount." We further found that the contract pursuant to which the payments were made to the widow related to the purchase of the property and not to an employment contract.

See also *Philadelphia-Baltimore Stock Exchange*, 19 T.C. 355, 360, wherein we held that payments in the amount of $900 in 1944 to the widow of a former employee were not deductible as ordinary and necessary business expenses under section 23(a)(1)(A) or section 29.23(a)–9 of Regulations 111. In that case we stated:

> The record shows that petitioner has made a monthly payment to the widow of John C. Colehower, a former employee, since his death in 1927. There is no showing that such payment was made pursuant to any contract or under an established pension plan. There is no evidence that the widow ever performed any services for petitioner or how petitioner directly benefited from such payment; nor is there any showing that such payments were for past compensation of the deceased employee or, if so, were reasonable in amount. The resolution authorizing the payment characterizes it as a "gratuity" payable until the resolution is rescinded. The fact that the amount to be paid was reduced in 1941 appears to confirm the fact that the payment was intended to be a gratuity. Obviously, the payment is not one deductible within the purview of Treasury Regulations 111, section 29.23(a)–9. Cf. *I. Putnam, Inc.*, 15 T.C. 86, 92.
>
> We hold that petitioner is not entitled to deduct the sum of $900, paid in the taxable year 1944 to the widow of a deceased employee, as an ordinary and necessary business expense. *McLaughlin Gormley King Co.*, 11 T.C. 569. On this issue the respondent is sustained.

Though not controlling under the 1954 Code and regulations, the holdings in the above-cited cases are at least persuasive here. As previously indicated, the payments here in question were not made pursuant to any contract of employment or provision for benefits to be paid the widow, or to any established pension plan. There is no showing of any benefit to petitioner such as the effect upon the morale or incentive of other officers or employees, and, there is no showing that the payments in question were in the nature of additional compensation for services previously rendered by petitioner's deceased president.

On the facts presented, I would hold that the payments in question have not been shown to satisfy the conditions of section 162(a)(1) and accordingly are not deductible by petitioner under that section or section 404(a).

*I. Putnam, Inc.*, *supra*, relied upon by petitioner, does not, in my opinion, require a different conclusion. In that case the Court was concerned with the question as to what constituted a "limited period" as that phrase was used in Regulations 111, section 29.23(a)–9. Ap-

parently there was no question but that the payments involved were "in recognition of services rendered by" the decedent therein, as required by both the statute and the regulations. *McLaughlin Gormley King Co., supra.* The resolutions authorizing the payments so stated.

Nor, in my opinion, does *Fifth Avenue Coach Lines, Inc., supra,* require a different conclusion. In that case petitioner's past president, Hugh J. Sheeran, had served petitioner for many years and during a period of severe difficulties, without a salary increase. He played a prominent role in securing bus franchises, the operation of which resulted in large profits for petitioner after having suffered heavy losses for many years. In November 1937, 4 months before his death, he received a substantial increase in salary. In March 1938 petitioner's board of directors voted to continue Sheeran's salary of $35,000 per annum by making monthly payments thereof to his widow through June 1938 and thereafter to make monthly payments to her at the rate of $7,500 per annum. The minutes of the board referred to the extraordinary services performed by Sheeran through the years without salary increase, as well as the need for making provisions to aid in the support of Sheeran's widow and her four children. The board also noted the practice of other corporations in this regard and the possible effect on the morale and incentive of other executives. Monthly payments in the amounts authorized were made to the widow through 1948. Respondent allowed petitioner deductions for the amounts paid for the years 1938 through 1943, and disallowed the deductions claimed for the years 1944 through 1948. This Court found as a fact that annual payments made to the widow during the years 1944 through 1948, "were paid by the petitioner in recognition of Sheeran's past services and were reasonable in amount." In view of this finding, the statement (p. 1096) that "to be deductible, the payments need not be in the nature of additional compensation" would appear to be dicta and unnecessary to the decision in that case.

In view of my conclusions respecting respondent's primary contention, I deem it unnecessary to consider respondent's contention, first mentioned in opening statement and on brief, that in reality the payments represented a nondeductible gift or contribution to her of corporate earnings, or petitioner's contention, on reply brief, that such questions are not properly before the Court.